PEOPLE v McINTIRE

Docket No. 113403. Decided September 14, 1999. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

In exchange for testimony before a grand jury in 1983, Charles R. McIntire was granted immunity from prosecution for a 1982 homicide. When the prosecuting attorney concluded in 1994 that the defendant was the killer, he charged him with murder and possession of a firearm during the commission of a felony, arguing that the immunity order was void because the defendant's testimony before the grand jury was untruthful. The Montmorency Circuit Court, Joseph P. Swallow, J., disagreed and dismissed the case. The Court of Appeals, MARKMAN and SMOLENSKI, JJ. (YOUNG, P.J., concurring in part and dissenting in part), reversed, and directed that the murder prosecution go forward. 232 Mich App 71 (1998) (Docket Nos. 194301). The defendant appeals.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices BRICKLEY, TAYLOR, KELLY, and CORRIGAN, the Supreme Court *held*:

Once an immunized witness has provided answers tending to incriminate, no prosecution for offenses touching upon crimes associated with such answers may be had.

MCL 767.6; MSA 28.946 does not condition transactional immunity on truthful testimony. There is but one condition that the Legislature has imposed on a grant of transactional immunity: that the witness give answers that may have tended to incriminate him. The Court of Appeals, having concluded or conceded that at least some portion of defendant's testimony may have tended to incriminate him, should have, under the plain language of the statute and application of traditional rules of statutory construction, affirmed the trial court's dismissal of the murder and felony-firearm charges.

Reversed.

Justice CAVANAGH concurred in the result only.

Justice YOUNG took no part in the decision of this case.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Benjamin Bolser*, Prosecuting Attorney, for the people.

State Appellate Defender (by *C. Joseph Booker*) for the defendant-appellant.

PER CURIAM. In exchange for testimony before a grand jury, the defendant was granted immunity in 1983 from prosecution for a then-unsolved 1982 homicide. When the prosecuting attorney later concluded that the defendant was the killer, he charged that the defendant was guilty of murder and possession of a firearm during the commission of a felony. The prosecutor argued that the immunity order was void because the defendant's testimony before the grand jury was untruthful, but the circuit court disagreed and dismissed the case. The Court of Appeals reversed, and directed that the murder prosecution go forward. We reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

A

On December 21, 1982, the body of Nolan Fritz was discovered at his home in Atlanta, Michigan, by his daughter. He had been shot to death.

The early investigation led the police to suspect that Charles R. McIntire (the defendant in the present case) and Thomas Fleck were involved in the homicide. A sheriff's deputy interviewed Mr. McIntire within a week after Mr. Fritz' body was found, and he vaguely admitted that he had been involved in an unspecified way. On the basis of the information gathered to that point, the police believed that Mr. Fleck

had been the shooter, but they did not have enouh evidence to prove his guilt.

The Montmorency Circuit Court ordered the formation of a one-man grand jury.[1] Mr. McIntire (but not Mr. Fleck) was summoned to testify on January 26, 1983. When Mr. McIntire invoked his Fifth Amendment right not to incriminate himself, the prosecutor requested that Mr. McIntire be given "complete immunity from any charges which would arise from the homicide of Nolan Fritz" in exchange for his testimony. The court granted the request.[2]

Mr. McIntire provided an account of his own activities and his contact with Mr. Fleck on the night of the homicide, but his testimony did not clearly implicate either of them in the homicide. The investigation thus appeared blocked, and the case remained unsolved for more than ten years. Mr. McIntire moved with his family to South Carolina in 1984.

In January 1993, the investigation of Nolan Fritz' death was turned over to the Michigan State Police. In 1994, a State Police trooper obtained a statement from Mr. Fleck, who implicated himself and Mr. McIntire in the shooting. Mr. Fleck essentially stated that, on the night of the homicide, he and Mr. McIntire drank until they ran out of money. Mr. McIntire suggested they visit an acquaintance named Nolan Fritz and ask for a loan. Soon after they entered Mr. Fritz' house, Mr. Fleck went into the bathroom. While in the

---

[1]    MCL 767.3; MSA 28.943.

[2]    The prosecuting attorney's one-sentence motion asked the circuit court "for an Order granting the witness, Charles McIntire, now present before the Grand Jury ordered in this session, complete immunity from any charges which would arise from the homicide of Nolan Fritz." On the same page, the circuit court signed beneath the four-word statement, "IT IS SO ORDERED."

bathroom, he heard two gunshots. Opening the door, he saw Mr. McIntire standing near Mr. Fritz with a pistol. Mr. McIntire directed Mr. Fleck to shoot Mr. Fritz, presumably as insurance that Mr. Fleck would tell no one about the killing. Mr. Fleck complied, believing that Mr. Fritz was already dead. Mr. McIntire stole Mr. Fritz' wallet, which contained approximately sixty dollars, and the men left. They later burned the wallet and threw the gun into a river from a bridge.

Mr. McIntire was arrested and charged with open murder and felony-firearm and, in a separate file, perjury. MCL 750.316, 750.227b, 750.422; MSA 28.548, 28.424(2), 28.664. He brought a motion to dismiss the murder and felony-firearm charges, on the basis of the 1983 order of immunity, but the circuit court deferred its decision, pending the outcome of the perjury trial.

On the basis of testimony from Mr. Fleck, a jury found Mr. McIntire guilty of four counts of perjury. The court sentenced him to serve concurrent terms of ten to fifteen years in prison. The defendant's appeal resulted in an affirmance of those convictions.[3]

Mr. McIntire then renewed his motion to dismiss the charges of open murder and felony-firearm on the ground of immunity. The prosecuting attorney opposed the motion, arguing that the immunity order was void or voidable because the defendant had perjured himself and had not provided incriminating answers in his grand jury testimony. The circuit court granted the motion to dismiss, holding that the defendant had been granted complete immunity that could not be voided on the basis of the perjured testimony.

---

[3]   232 Mich App 71; 591 NW2d 231 (1998), lv den 460 Mich 861 (1999).

The prosecuting attorney appealed. In October 1998, the Court of Appeals reversed the dismissal order, and remanded the case for reinstatement of the murder and felony-firearm charges.[4] 232 Mich App 71; 591 NW2d 231 (1998).

A majority of the Court of Appeals panel agreed that an obligation to provide truthful answers is an implicit condition of an immunity agreement under MCL 767.6; MSA 28.946.[5] Thus, reasoned the Court of Appeals, a grant of immunity is void where a witness

---

[4] This decision was rendered in the same opinion in which the Court of Appeals affirmed the perjury convictions.

[5] The statute provides:

No witness shall upon such inquiry be required to answer any questions, or shall be convicted for contempt upon refusal to do so, when the answers might tend to incriminate him. *A written order granting to such witness immunity from such incrimination may be entered by said judge pursuant to a written motion by the prosecuting attorney* or other duly authorized representative of the state in such proceeding, which order shall set forth verbatim the questions which such witness refused to answer. A true copy of such motion and order shall be delivered to such witness before he shall answer such questions. The order granting immunity so made shall thereafter extend to all related questions which may thereafter be put to such witness until such judge advises the witness that said immunity no longer applies. All such questions and the answers thereto shall be reduced to writing under the direction of such judge and a true copy of such transcript, duly certified by such judge, shall be delivered to such witness as soon as practicable thereafter. The provisions for secrecy provided for in [MCL 767.3; MSA 28.943] hereof shall apply to all copies of such motion, order and transcript so delivered to such witness except that the witness may be privileged to disclose the same to his attorney if such witness should thereafter be prosecuted for any offense directly or indirectly growing out of any testimony given by him in such inquiry. *No person required to answer such questions shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him.* No such order granting immunity shall extend beyond the scope of such inquiry, nor shall it extend beyond the particular questions set forth in any such motion, order or transcript. [MCL 767.6; MSA 28.946 (emphasis supplied).]

has testified falsely. 232 Mich App 81-93. In dissent, Justice ROBERT P. YOUNG JR. said that the unambiguous language of the statute contained no requirement of truthful testimony, and that the defendant's perjury was therefore not a proper basis for disregarding the immunity agreement and charging him with murder.[6] 232 Mich App 118-127.

The defendant has applied to this Court for leave to appeal.

B

In the opening paragraph of his dissenting opinion, Justice YOUNG summarized his view of this matter:

> Because I do not believe that the statute regarding the granting of immunity to a witness compelled to testify before a one-man grand jury, MCL 767.6; MSA 28.946, conditions its grant of transactional immunity on "truthful" testimony, I would affirm the trial court's order dismissing the charges of first-degree murder and felony-firearm. [232 Mich App 118-119.]

Our review of this matter persuades us of the correctness of Justice YOUNG's dissenting opinion. We reproduce that opinion here, and adopt it as our own.

### I. APPLICATION OF TRADITIONAL PRINCIPLES OF STATUTORY CONSTRUCTION

Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). A funda-

---

[6] Justice YOUNG's opinion is styled as a partial concurrence/partial dissent because he concurred in the affirmance of the perjury convictions.

mental principle of statutory construction is that "a clear and unambiguous statute leaves no room for judicial construction or interpretation." *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993). When a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to *apply* the terms of the statute to the circumstances in a particular case. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995); *Lake Angelus v Oakland Co Rd Comm*, 194 Mich App 220, 224; 486 NW2d 64 (1992). Finally, in construing a statute, we must give the words used by the Legislature their common, ordinary meaning. MCL 8.3a; MSA 2.212(1).

These traditional principles of statutory construction thus force courts to respect the constitutional role of the Legislature as a policy-making branch of government and constrain the judiciary from encroaching on this dedicated sphere of constitutional responsibility. Any other nontextual approach to statutory construction will necessarily invite judicial speculation regarding the probable, but unstated, intent of the Legislature with the likely consequence that a court will impermissibly substitute its own policy preferences. See *Cady v Detroit*, 289 Mich 499, 509; 286 NW 805 (1939) ("Courts cannot substitute their opinions for that of the legislative body on questions of policy"). Unfortunately, the [Court of Appeals] majority has abandoned these traditional rules of construction, ignored the plain text of the statute before us, and substituted its own policy preferences for those of our Legislature by finding an unexpressed legislative intent that a witness who lies in a one-man grand jury proceeding forfeits statutory immunity granted under MCL 767.6; MSA 28.946. While [we] do not question the sincerity of [the Court of Appeals majority's] effort, [we] view the [Court of Appeals] opinion as a herculean, yet ultimately unsuccessful, attempt to create an ambiguity where none exists in order to reach a desired result, albeit one with which [we] might wholeheartedly agree [if we were legislators] authorized to enact policy.

The immunity statute, MCL 767.6; MSA 28.946, provides, in relevant part:

"No witness shall upon such inquiry be required to answer any questions, or shall be convicted for contempt upon refusal to do so, when the answers might tend to incriminate him. A written order granting to such witness immunity from such incrimination may be entered by said judge pursuant to a written motion by the prosecuting attorney . . . , which order shall set forth verbatim the questions which such witness refused to answer. . . . *No person required to answer such questions shall thereafter be prosecuted for any offense concerning which such answers may have tended to incriminate him.* [Emphasis added.]"

The text of the statute is clear and unambiguous. It simply does not condition transactional immunity on *truthful* testimony.[1] As [we] read the immunity statute, there is but one condition that the Legislature has imposed on a grant of transactional immunity: that the witness give answers that "may have tended to incriminate him." *Id.* The above-emphasized language of the statute would seem to admit of no contrary intent. It is hard for [us] to conceive of language the Legislature could have otherwise employed that would more emphatically have proclaimed that, once an immunized witness has provided answers tending to incriminate, no prosecution for offenses touching upon crimes

---

[1] The [Court of Appeals] majority acknowledges that it was permissible for the prosecutor, as a condition for granting immunity, to add additional terms beyond that imposed by the statute. [232 Mich App 84.] Unfortunately, the prosecutor failed in this case to require truthful testimony as one such condition of the grant of immunity given.

It is this omission on the part of the prosecution that [the Court of Appeals majority seeks] to repair by rewriting the immunity statute. Indeed, despite the fact that the [Court of Appeals] purports to be interpreting the immunity statute, the essential thrust of its analysis suggests that the [Court of Appeals] believes that it is actually constructing a contractual undertaking. Therefore, the [Court of Appeals] majority writes: "On the basis of these three factors, we conclude that the *immunity agreement* is void . . . ." [232 Mich App 91] (emphasis added); see also [232 Mich App 92] n 10. We would do better by respecting the limitations of the statute and admonishing the prosecutors of this state to impose truthtelling as a condition of any agreement to grant immunity under the statute.

associated with such answers may be had. Indeed, the "tended to incriminate" standard appears to present a rather low threshold that need be met in order to invoke the immunity protections of the statute. See, e.g., *People v Joseph*, 384 Mich 24, 29; 179 NW2d 383 (1970) (holding that the privilege against self-incrimination extends not only to answers that would in themselves support a conviction, but also to answers that would furnish a link in the chain of evidence needed to prosecute the defendant).

The [Court of Appeals] majority, having concluded or conceded that "at least some portion of defendant's testimony 'may have tended to incriminate' him," [232 Mich App 82] n 6, should have, under the plain language of the statute and application of traditional rules of statutory construction, affirmed the trial court's dismissal of the murder and felony-firearm charges. Instead, the [Court of Appeals] majority . . . enacts by judicial ukase a new statute requiring truthful testimony as a condition precedent to a grant of transactional immunity. The [Court of Appeals] acknowledges that "there is no express requirement that the immunized individual 'answer' questions truthfully." [232 Mich App 86.]

## II. SINS OF AN UN*HOLY TRINITY*: THE SO-CALLED "ABSURD RESULT" RULE OF CONSTRUCTION[2]

Significantly, the [Court of Appeals] majority never, with respect to the *text* of the statute, identifies the terms or

---

[2]   Reference is made here to the infamous case, *Church of the Holy Trinity v United States*, 143 US 457; 12 S Ct 511; 36 L Ed 226 (1892), that is sometimes recognized as a foundational stone of the "absurd result" rule of statutory construction. See *Salas v Clements*, 399 Mich 103, 109; 247 NW2d 889 (1976).

In *Holy Trinity*, the United States Supreme Court was required to determine whether the Holy Trinity Church, which contracted with a resident of England to be its pastor, had therefore violated a federal statute making it unlawful (and punishable by a fine) for any person to " 'in any way assist or encourage the importation or migration of any alien . . . into the United States . . . to perform labor or service of any kind in the United States . . . .' " *Id.* at 458. Although the Court conceded that the act of the church was "within the letter of [the statute]," and thus proscribed, the Court nonetheless concluded: "we cannot think Congress intended to

phrases it finds to be ambiguous.[3] Rather, in order to justify

---

denounce with penalties a transaction like that in the present case." *Id.* at 458-459. The Court explained: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Id.* at 459.

In Michigan, this same so-called rule of statutory construction has been stated as follows: "[D]eparture from the literal construction of a statute is justified when such construction would produce an *absurd and unjust result* and would be clearly inconsistent with the purposes and policies of the act in question." *Salas*, n 2, *supra* at 109 (emphasis added).

[We] agree with Justice Scalia's description of such attempts to divine unexpressed and nontextual legislative intent as "nothing but an invitation to judicial lawmaking." Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 21. This nontextual approach to statutory construction has unfortunately led [the Court of Appeals majority] away from the task of determining the *Legislature's* expressed intent.

[3]   [The Court of Appeals majority] vehemently [denies the] charge that they have abandoned traditional rules of construction, but assert that, by using the same tools, they have simply reached a different set of conclusions. [232 Mich App 87] n 7. The [Court of Appeals] argues that when the meaning of a statute has been "questioned," construction must be determined by examining the purpose of the statute and the "statutory context" with which the language is used. [232 Mich App 85.] [Our] critique of the [Court of Appeals] approach to statutory construction is a challenge of [its] initial premise: when the language of a statute is internally consistent and not ambiguous, from whence arises the right of the Court to "question" its meaning?

[We] agree that, when one part of a statute points to one conclusion, while another part points elsewhere, the "contextual" approach of the [Court of Appeals] majority is applicable in order to reconcile the two apparently divergent parts. See *Michigan Bell Telephone Co v Dep't of Treasury*, 229 Mich App 200, 212-217; 581 NW2d 770 (1998). However, the [Court of Appeals] majority has never identified why the text of the immunity statute is internally inconsistent or ambiguous, thereby giving rise to the need for interpretation. In sum, [we] find entirely unpersuasive [the Court of Appeals majority's] effort to "*re*define" the commonplace and unambiguous statutory term "answer."

Second, [we] specifically repudiate the [Court of Appeals] majority's notion that the "context" of the immunity statute suggests a basis for ignoring the plain language of the statute. As [we] argue

its action in looking beyond the text to determine legislative intent, the [Court of Appeals] majority embarks on an "absurd result" analysis in which the [Court] focuses not on what the Legislature *said* through the text of the statute, but what the [Court] believes the Legislature *must really have meant* despite the language it used. The essence of the [Court of Appeals] majority's position is that it concludes that the Legislature could not have intended a perjury charge to be the sole consequence for testifying falsely before a one-man grand jury. Therefore, in order to avoid what it believes would be an "illogical" result, the [Court of Appeals] majority expends a great deal of interpretive justification to "infer" a legislative intent that the immunity granted by MCL 767.6; MSA 28.946 not apply when a witness gives "materially false testimony." [232 Mich App 91.]

The [Court of Appeals] majority asserts that the "Legislature could not intelligently or rationally deal with immunity and compelled testimony without considering the consequences of a suspect's failing to truthfully provide such compelled testimony." [232 Mich App 86.] On the basis of that premise, the [Court of Appeals] purports to scrutinize "the purpose, the text, and the context of the immunity statute" in search of "a more logical and reasonable result . . . ."[4] [232 Mich App 86-87.] However, the logical

---

later, the [Court of Appeals] majority's resort to nontextual policy bases for discerning the Legislature's intent to forfeit immunity when false testimony is given in a one-man grand jury proceeding is belied by the fact that the Legislature enacted a separate section of the criminal procedure code specifically to punish such behavior as perjury. Thus, to the extent that [the Court of Appeals] is authorized to look beyond the text of the immunity statute—a premise that [we] dispute—the perjury statute supplies a nearly irrefutable clue that the Legislature intended perjury, not immunity forfeiture, as the penalty for giving false testimony.

[4] [We] cannot agree with [the Court of Appeals majority] that, because the Legislature chose a remedy that the [Court of Appeals] finds in this case to be inadequate, the Legislature failed to recognize that the goal of the immunity statute is to obtain "helpful," hence "truthful," testimony. For the purposes of [our] analysis, [we] need not disagree with the [Court of Appeals] that the goal of the immunity statute at issue here is to compel truthful testimony. The

force of the [Court of Appeals] argument is entirely eviscerated by the fact that the Legislature *did* deal with the prospect of false testimony given in a one-man grand jury proceeding. It did so by enacting a separate section of the criminal procedure code expressly prohibiting perjury in *any* grand jury proceeding. See MCL 767.19d; MSA 28.959(4).[5]

From the explicit terms of these statutes, two indisputable things are established: (1) that the Legislature did not overlook the "problem" posed by the [Court of Appeals] majority, but was fully aware of the fact that some immunized individuals might give false testimony in grand jury proceedings, hence its enactment of the grand jury perjury statute, and (2) that the Legislature did not fail to indicate its intentions concerning how it wished to deal with false testimony in this context, but instead selected a specific remedy to deal with this problem. From these two facts [we are] forced to conclude that [we] need "infer" nothing about the intent that the Legislature made so plain in enacting these two statutes. The Legislature made an express choice to punish otherwise-immunized false swearers by authoriz-

---

difference in our approach and respective conclusions is not a disagreement on the goal of the statute, but on whether the Legislature has foreclosed [the Court of Appeals] right to establish a *penalty* other than that which the Legislature has chosen.

Thus, while the [Court of Appeals] majority makes compelling arguments that support a rational, but different, policy choice regarding an appropriate penalty for perjury committed by a witness given immunity under the statute, the object of judicial statutory construction is not to determine whether there are valid *alternative* policy choices that the Legislature may or should have chosen, but to determine from the text of the statute the policy choice the Legislature *actually* made.

[5]    MCL 767.19d; MSA 28.959(4) provides:

"A person who wilfully swears falsely under oath in regard to any matter or thing upon which he is being examined is subject to the penalties of perjury as prescribed by law."

[We] also note that perjury committed in any court proceeding has been prohibited by separate statute since as early as 1846. See MCL 750.422; MSA 28.664.

ing their prosecution for perjury. This is the policy choice that [we] believe [the judiciary] is obligated to respect and enforce. By contrast, [the Court of Appeals has] turned traditional statutory construction principles inside out in order to achieve a different desired result. The [Court of Appeals] majority is able to invoke its "implied remedy" of withdrawing defendant's immunity in this case *only* by ignoring both the language of the immunity statute itself *and* the separate statute prohibiting perjury in grand jury proceedings. The [Court of Appeals] has the power to do so; it does not have the authority.

It is clear that the [Court of Appeals] majority believes that a perjury prosecution should not be the only consequence when a witness who is given statutory immunity testifies falsely before a one-man grand jury. However, under the clear and unambiguous language of the immunity statute, especially when considered in light of the separate prohibition against perjury in all grand jury proceedings, our Legislature has concluded otherwise and expressly said so. Whether the Legislature's choice to limit the range of penalties for lying in grand jury proceedings to prosecutions for perjury serves as a sufficient deterrent to perjury in this context is simply not [the Court of Appeals] concern. " '[I]t is not required that we should be sure as to the precise reasons for [a particular statutory] judgment or that we should certainly know them or be convinced of the wisdom of the legislation.' " *Cady, supra* at 509 (citation omitted); see also *Melia v Employment Security Comm*, 346 Mich 544, 561; 78 NW2d 273 (1956). To paraphrase the apt observation Justice RILEY made in another context, in our democracy, a legislature is free to make inefficacious or even unwise policy choices. The correction of these policy choices is not a judicial function as long as the legislative choices do not offend the constitution. Instead, the correction must be left to the people and the tools of democracy: the "ballot box, initiative, referendum, or constitutional amendment." *Dedes v Asch*, 446 Mich 99, 123-124; 521 NW2d 488 (1994) (RILEY, J., dissenting).

III. CONCLUSION

It cannot be gainsaid that if the Legislature intended that immunity be forfeited completely upon the giving of false testimony, it could easily have said so.[6] However, the Legislature did not, and [we] believe that the [Court of Appeals] majority mistakenly reads that condition into the statute to further policy concerns that the [Court], but apparently not the Legislature, prefers. Because [we are] unable to reconcile the [Court of Appeals] analysis with traditional rules of statutory construction and what [we] believe is a proper reading of MCL 767.6; MSA 28.946, [we disagree with the Court of Appeals majority's] conclusion that defendant may be tried for murder and felony-firearm. [232 Mich App 119-127.]

For the reasons stated in the above opinion by Justice YOUNG, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

WEAVER, C.J., and BRICKLEY, TAYLOR, KELLY, and CORRIGAN, JJ., concurred.

CAVANAGH, J., concurred in the result only.

YOUNG, J., took no part in the decision of this case.

---

[6] Considering the fact that, in many cases (such as this one), the punishment for the underlying crime that is the subject of the grand jury testimony will be far greater than that for perjury, [we] find it particularly troubling to infer without some legislative guidance a provision that would, as a consequence of lying under oath, completely remove a witness' immunity from prosecution.

Having in effect created such a provision from wholecloth, the [Court of Appeals] majority fails to suggest how to determine in a given case whether a witness' false testimony is sufficiently false to warrant a finding that immunity has been forfeited. These are, however, mere "practical problems" that [the Court of Appeals] is wont to pass off as issues to be addressed on another day. [We] merely note for the record that it is the [Court of Appeals] insistence upon creating a new policy not found in the statute that has caused the breach in the damworks.