PICCALO v NIX

Docket No. 212752. Submitted November 13, 2000, at Detroit. Decided
    May 15, 2001, at 9:10 A.M. Leave to appeal sought.

Shanti Piccalo brought an action in the Oakland Circuit Court against
    Gillian Nix, alleging that, as a result of the defendant's negligence,
    she sustained injury in an automobile accident on her way home
    from a party hosted by the defendant. The plaintiff, Michael Burn-
    ham, and others had attended a party at the defendant's home and
    had left in a vehicle driven by Burnham. The plaintiff had sustained
    injury when the vehicle left the roadway and struck a tree. The
    plaintiff alleged that persons who, like the plaintiff and Burnham,
    were below the legal drinking age of twenty-one years had access
    to beer and narcotics at the party, that police officers who
    responded to a complaint by one of the defendant's neighbors had
    warned the defendant that Burnham was intoxicated, and that the
    defendant had assured the police that intoxicated guests would not
    be allowed to drive away from the party. The court, David F. Breck,
    J., entered a judgment of no cause of action after a jury found the
    defendant nineteen percent negligent, Burnham twenty-eight per-
    cent negligent, and the plaintiff fifty-three percent negligent. The
    plaintiff appealed.

    The Court of Appeals held:

    1. The trial court erred in allowing the defendant to raise MCL
    600.2955a as a defense. MCL 600.2955a provides that it is an abso-
    lute defense in an action for the death of an individual or for injury
    to a person or property that the individual on whose death or
    injury the action is based had an impaired ability to function
    because of the influence of intoxicating liquor or a controlled sub-
    stance and, as a result of that impaired ability, the individual was
    fifty percent or more the cause of the accident or event that
    resulted in the death or injury. The impairment defense does not
    apply in this case, where the alleged negligence of the defendant is
    the illegal furnishing of alcohol to minors, because it would be
    inconsistent with the purposes and policies underlying the defense
    and it would lead to an absurd and unjust result to allow the per-
    son who caused or created the impairment to benefit from the
    defense.

2. The trial court erred in not striking the testimony defense counsel elicited from the plaintiff regarding her percentage of fault. The opinion testimony invaded the jury's province of determining the parties' relative negligence.

3. The trial court erred in allowing defense counsel to make comments to the jury about a fee agreement between the plaintiff and her counsel and to elicit testimony from police witnesses about police conduct relative to Burnham. The comment to the jury was improper inasmuch as no evidence about a fee agreement was introduced at trial. The police testimony was improper in light of an evidentiary ruling against the admissibility of evidence concerning actions the police should or should not have taken with respect to Burnham.

4. While each of the errors at trial, standing alone, was harmless, the errors when considered together show cumulative prejudice and warrant a new trial.

Reversed and remanded for a new trial.

ZAHRA, P.J., dissenting, stated that, assuming the Court of Appeals can still depart from the literal construction of a statute to avoid an absurd or unjust result in light of Supreme Court criticism of such practice, the application of MCL 600.2955a to this case is neither absurd nor unjust. Both the plaintiff and Burnham, being adults over the age of eighteen, knew or should have known that they were precluded by law from consuming alcohol or illegal drugs. It is not absurd that the impairment defense applies even when the illegal conduct is facilitated by the alleged tortfeasor inasmuch as it represents a public policy choice made by the Legislature. Also, the trial court did not err in failing to strike the plaintiff's testimony regarding her percentage of fault inasmuch as the plaintiff failed to preserve the issue for appeal with a proper objection. Finally, the cumulative effect of the plaintiff's remaining claims of error is insufficient to set aside the verdict rendered.

1. APPEAL — MULTIPLE ERRORS — CUMULATIVE PREJUDICE.

   Errors at trial that are harmless when considered singly may require reversal if they show cumulative prejudice when considered together.

2. COURTS — STATUTORY CONSTRUCTION — ABSURD AND UNJUST RESULTS.

   A court that construes a statute may depart from a strict literal interpretation of the statute if such an interpretation would be inconsistent with the purposes and policies underlying the provision and would lead to absurd and unjust results.

3. TORTS — IMPAIRMENT DEFENSE.

   The statute that provides an absolute defense to a defendant in an action for injury to person or property if the plaintiff had an impaired ability to function because of the influence of intoxicating liquor or a controlled substance and, as a result of that impaired ability, the plaintiff was fifty percent or more the cause of the accident or event that resulted in the injury does not apply to a defendant who caused or created the impairment, e.g., a defendant sued for negligence for the injury of a minor who was furnished alcohol by the defendant (MCL 600.2955a).

4. WITNESSES — OPINION TESTIMONY — NEGLIGENCE OF PARTIES.

   A witness in a negligence action may not give an opinion regarding the relative negligence of the parties; such opinion testimony would invade the factfinder's province of determining negligence.

5. TRIAL — IMPROPER COMMENTS BY COUNSEL — APPEAL.

   The Court of Appeals when reviewing asserted improper comments by an attorney first determines whether the attorney's action was error and, if so, whether the error requires reversal; an attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial; reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved.

*Schreier & Weiss, P.C.* (by *Jay B. Schreier*), for the plaintiff.

*Francis A. McCarroll* (*Gross, Nemeth & Silverman, P.L.C.*, by *Steven G. Silverman*, of Counsel), for the defendant.

Before: ZAHRA, P.J., and HOOD and MCDONALD, JJ.

HOOD, J. Plaintiff appeals as of right, following a jury trial, from a judgment of no cause of action. We reverse and remand for a new trial.

On July 4, 1996, defendant hosted a party at her
residence. Defendant purchased a keg of beer[1] and
food for the event. The event was attended by defen-
dant's son and his friends, including members of the
son's band. The majority of the individuals who
attended the party, including plaintiff, were under
twenty-one years of age. Defendant testified that she
and members of the band told individuals attending
the party that the beer was for individuals who were
of legal drinking age. In addition to alcohol on the
premises, various witnesses testified that they
brought marijuana and "magic mushrooms" to the
party for their own personal use.[2] The location of
defendant's home provided limited parking space, so
numerous individuals parked across the street at a
senior citizen apartment complex. The police received
a complaint from residents of the complex about a
disturbance. The police found men, including Michael
Burnham, by his van in the parking lot of the senior
complex. There were two cups and a bottle of beer in
the van, as well as drug paraphernalia. The men had
an "X" on their hands. They indicated that they had
been drinking at defendant's residence, and the "X"
on their hands indicated that they had paid $5 for

---

[1] Defendant and her son testified that the keg was a quarter barrel of
beer, while other witnesses testified that the keg was a half barrel of beer.

[2] The witnesses' testimony regarding defendant's knowledge of the sub-
stance and alcohol use varied. Defendant claimed that she did not see
underage individuals consuming alcohol and that soda pop was available
for those individuals. Additionally, defendant claimed that marijuana use
did not occur in her presence, and she did not smell marijuana. Other wit-
nesses concurred that marijuana use did not occur in defendant's pres-
ence. However, plaintiff and Jennifer Cassavoy testified that defendant
was aware of drug and alcohol use by minors that occurred openly in the
home.

beer.[3] Police officers opined that Burnham was intoxi-
cated. They allegedly walked the men back to defen-
dant's residence and spoke to her regarding the con-
dition of the men. Defendant allegedly told police that
she would ensure that intoxicated individuals were
driven home by designated drivers or stayed at the
residence. The keys to Burnham's van were allegedly
given to defendant. Some witnesses testified that,
after the visit from the police, defendant lectured
party attendees regarding their conduct and collected
keys to vehicles. Additionally, defendant and other
witnesses testified that the keg was "untapped" after
the visit by the police. Defendant testified that the
"tap" was hidden in the garage to preclude further
drinking. Other witnesses testified that beer contin-
ued to be drawn from the keg until it was empty.

The testimony surrounding Burnham's departure
from the party also varied. Defendant testified that
she was assured that Burnham was not driving home,
but was being driven home by another individual.
Defendant had trouble identifying the various individ-
uals who had attended the party and who agreed to
ensure Burnham's safe return home. Other witnesses
alleged that defendant turned the lights on and off
and told everyone to leave the home, in such a man-
ner that staying overnight at the residence was not an
option. Another witness testified that defendant
implored Burnham to stay the night at her home, but
Burnham essentially "fooled" defendant into believing
that he was capable of driving. Nonetheless, Burnham
got into his cargo van with five other individuals,

---

[3] Defendant testified that the $5 was not charged for beer, but was to
cover the costs of the extensive amount of food purchased for the party
and for the band.

including plaintiff. There were only two seats in the van, one for the driver and one for the front seat passenger. The remaining area of the van was open and contained tires and tools. The four passengers, including plaintiff, lay or sat in the back while Burnham drove them home. Unfortunately, the front seat passenger was obnoxious. There was frequent yelling and manipulation of the radio between the front seat passenger and Burnham. The back seat passengers yelled at Burnham to calm down and slow down because the van was traveling at a high rate of speed. Burnham failed to negotiate a slight curve in a gravel road and drove the van into a tree. Plaintiff was injured by the tires that were in the vehicle. When the police arrived on the scene, they found mushrooms near the van. Later testing of the mushrooms revealed that they had not been chemically altered, but were plain, ordinary mushrooms. The occupants of the van, for some unknown reason, hid the tires away from the scene of the accident. The police were never able to determine why the tires were moved.

Before the commencement of trial, plaintiff's counsel sought to exclude evidence of plaintiff's drug and alcohol use before the day of the accident. Additionally, plaintiff sought to exclude allegations that police officers were negligent in failing to arrest Burnham following their determination that he was intoxicated and in possession of drug paraphernalia in his van. The trial court did not exclude evidence of plaintiff's prior use, but did conclude that defendant would not be allowed to argue the negligence of police. Also, just before trial, plaintiff wished to add an allegation that defendant committed negligence for violating a local city ordinance. The trial court granted plaintiff's

request, but refused to allow defendant to introduce her acquittal of a citation. Following an acrimonious trial, the jury concluded that defendant was nineteen percent negligent, Burnham was twenty-eight percent negligent, and plaintiff was fifty-three percent negligent, thereby precluding recovery.

On appeal, plaintiff raises various claims of error as grounds for a new trial. We conclude that the cumulative effect of errors requires reversal and remand for a new trial. *Haynes v Seiler*, 16 Mich App 98, 103; 167 NW2d 819 (1969) ("Although one of several incidents or errors, standing alone, may be disregarded as harmless error, it is still possible that when considered *in toto* they accumulate such a cumulative prejudice that they may require a reversal.").

Plaintiff argues that the trial court erred in applying and instructing the jury regarding the impairment defense. We agree. MCL 600.2955a provides, in relevant part:

> (1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.

Issues of statutory construction present questions of law and receive review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of statutory interpretation is to give

effect to the intent of the Legislature. *In re MCI Tele-communications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). This determination is accomplished by reviewing the plain language of the statute itself. *Id.* If the statutory language is unambiguous, it is presumed that the Legislature intended the clearly expressed meaning, and judicial construction is neither required nor permitted. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Only when the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. *Id.* We may depart from a strict literal interpretation of a statute that is inconsistent with the purposes and policies underlying the provision and would lead to absurd and unjust results. *Albright v Portage*, 188 Mich App 342, 350, n 7; 470 NW2d 657 (1991).

In the present case, the alleged negligence committed by defendant was the violation of state and local law in providing alcohol to minors.[4] Specifically, plaintiff presented evidence, if deemed credible, that defendant made alcohol accessible to minors, knew that minors were consuming the alcohol, learned through the police of the impairment of an underage drinker, Burnham, and failed to take adequate mea-

---

[4] Admittedly, plaintiff, being over the age of eighteen, can be characterized as an adult. However, for purposes of consumption of alcoholic liquor, the Legislature has determined that she is underage and cannot be furnished alcohol. At the time pertinent to this action and before its repeal by 1998 PA 58, MCL 436.33(1) provided: "Alcoholic liquor shall not be sold or furnished to a person unless the person has attained 21 years of age." MCL 436.1701, enacted with 1998 PA 58, provides: Alcoholic liquor shall not be sold or furnished to a minor. MCL 436.1109(3) defines minor as "a person less than 21 years of age." Any modification to the age of majority in the context of alcoholic liquor should be directed to the Legislature.

sures to prevent further inebriation. Accordingly, defendant seeks to benefit from the impairment defense when the alleged negligence was providing the means of impairment to underage minors. While the statute itself provides that the defense of impairment is "absolute" and applies "in an action for the death of an individual or for injury to a person or property," we decline to apply the statute in this personal injury action where defendant allegedly created the condition of impairment of both driver Burnham and plaintiff as well as other party attendees. It would be absurd to allow the defense of impairment to an individual who caused or created the impairment of the injured person. *Albright, supra.* Accordingly, defendant's contention that the statute applies in the present case is without merit.[5]

Plaintiff also argues that the trial court erred in failing to strike the testimony defense counsel elicited from the plaintiff regarding her percentage of fault. We agree.[6] A jury determines the outcome of a case,

---

[5] The parties dispute whether the statute applies on the basis of the Legislature's failure to define the terms "cause" and "event" within the statute. Specifically, plaintiff argues that she did not suffer an impairment that "caused" the accident or event, and plaintiff's decision to accept a ride from Burnham is an "act" as opposed to an "event." Defendant contends that plaintiff's decision to accept a ride constitutes an "event" that caused her injuries. In light of our disposition of this issue, we need not address the parties' exercise in semantics.

[6] MRE 103(a)(1) provides that a party opposing the admission of evidence must timely object at trial and specify the same ground for objection that is asserted on appeal. See also *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997). To be timely, an objection should be interposed between the question and answer. *Id.* In the present case, plaintiff's counsel did not provide an evidentiary basis for the objection, but stated that defense counsel knew that the comment was inappropriate. The trial court did not request an evidentiary basis to support the objection, but instructed defense counsel to rephrase the question. Plaintiff then estimated her fault at fifty percent. Accordingly, plaintiff did not comply with the strict rules regarding preservation. When an issue is not preserved for

and a witness is not permitted to tell the jury how to decide the case. *Carson, Fischer, Potts & Hyman v Hyman*, 220 Mich App 116, 122-123; 559 NW2d 54 (1996). " 'A witness is prohibited from opining on the issue of a party's negligence or nonnegligence, capacity or noncapacity to execute a will or deed, simple versus gross negligence, the criminal responsibility of an accused, or [the accused's] guilt or innocence.' " *Id.* at 123 quoting *People v Drossart*, 99 Mich App 66, 79-80; 297 NW2d 863 (1980). It is error to allow the witness to give the witness' own opinion or interpretation of the facts because the opinion testimony invades the province of the jury. *Carson, supra* at 123. Case law provides that the inquiry by defense counsel is prohibited. A witness is not to interpret the facts and determine contributory negligence because such opinion testimony invades the province of the jury. *Carson, supra.*[7] Accordingly, the trial court's admission of this testimony was improper.

Plaintiff also argues that the trial court erred in failing to cure the violation of plaintiff's substantial rights when defense counsel improperly referred to a fee agreement between plaintiff and her counsel and improperly elicited testimony from police officers that had been excluded by the trial court. We con-

---

appellate review, we determine whether manifest injustice will result from our failure to review the issue. *Winters v Dalton*, 207 Mich App 76, 79; 523 NW2d 636 (1994). The determination of what constitutes manifest injustice is contingent on the circumstances peculiar to each individual case. *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 94; 380 NW2d 60 (1985). In the present case, we conclude on the basis of the cumulative error present in this case that manifest injustice would occur if we did not review the issue.

[7] Indeed, when the inquiry was reversed, defense counsel objected to this type of inquiry. When plaintiff's counsel asked defendant whether she was negligent, an objection was raised.

clude that the outcome of this issue, coupled with other errors regarding fault and statutory application, warrant a new trial. "When reviewing asserted improper comments by an attorney, we first determine whether the attorney's action was error and, if it was, whether the error requires reversal." *Kubisz v Cadillac Gage Textron, Inc*, 236 Mich App 629, 638; 601 NW2d 160 (1999). Unless the attorney's comments indicate a deliberate course of conduct designed to prevent a fair and impartial trial, there is no cause for reversal. *Id.* Reversal is required where prejudicial statements are made that reflect a studied attempt to inflame the jury or deflect the jury's attention from the issues involved. *Id.* In the present case, there was no evidence introduced regarding any fee agreement between plaintiff and her counsel. Despite the lack of an evidentiary basis, defense counsel noted that plaintiff requested in excess of $2 million in damages with one-third of that amount to plaintiff's counsel. On appeal, defendant concedes that the argument was improper and fails to offer any proper purpose for referencing the fee before the jury.[8] While we cannot conclude that the statement was a studied attempt to inflame the jury, arguably it was elicited to detract the jury from the issues of fault and negligence. Furthermore, defense counsel was on notice, before trial, that the negligence of police officers was not an issue at trial. Despite the prior notice that such testimony was not admissible, defense counsel elicited from the police testimony regarding whether Burnham could

---

[8] Additionally, defense counsel asked Cassavoy about her own attorney and, in response to her answer, commented that it was not a "White House intern" situation. Such commentary is ill advised, unnecessary, and merely serves to deflect the jury's attention from the issues at hand.

have or should have been arrested following police
contact at the senior citizen complex. Plaintiff's coun-
sel objected to the introduction of the evidence. The
trial court merely overruled the objection without
commenting on any reversal of the prior ruling or
whether the questioning was somehow outside the
bounds of the prior ruling. The testimony elicited by
defense counsel was outside the scope of the initial
ruling. It appears that the testimony was introduced
to deflect the jury's attention from the issue at hand,
that being any liability of defendant. Accordingly,
defense counsel's improper conduct and introduction
of evidence outside the scope of the trial court's rul-
ing served to deflect the jury's attention from the
issues at hand and warrants a new trial in light of the
totality of errors in the case.[9]

---

[9] We note that plaintiff raises other issues of alleged evidentiary error.
We have concluded that a new trial is warranted and the presiding judge
over the initial trial has since retired. A circuit judge is required to follow
published decisions from the Court of Appeals and the Supreme Court.
*People v Hunt*, 171 Mich App 174, 180; 429 NW2d 824 (1988). There is no
similar requirement that one circuit judge follow the decision of the other.
*Id.* Accordingly, on remand the presiding judge is free to examine
unresolved evidentiary issues anew. For example, on appeal, plaintiff con-
tends that her prior drug and alcohol use is irrelevant and inadmissible.
Plaintiff argues that the evidence was admitted to place her in a bad light.
While it appears on its face that any prior drug or alcohol use has no rele-
vance to the issue of defendant's negligence on the date in question, plain-
tiff, nonetheless, elicited extensive testimony from other witnesses regard-
ing their own prior drug use. Plaintiff cannot use the same rules of evi-
dence as both a shield and a sword. Plaintiff also alleges that testimony
regarding her boyfriend's financial wherewithal was improperly admitted.
However, this testimony was elicited after plaintiff's counsel, on direct
examination, introduced evidence regarding plaintiff's live-in companion
and ownership of her own home. Plaintiff's counsel cannot introduce evi-
dence then exclude cross-examination on topics introduced by plaintiff.
Additionally, while the trial court held that the negligence of police was
not relevant to this trial, it then allowed, for some unknown reason,
defense counsel to question police regarding their options and actions.
After its initial ruling regarding exclusion of police negligence, the trial
court allowed plaintiff's counsel to amend the allegations to include viola-

. Reversed and remanded for a new trial. We do not retain jurisdiction.

McDONALD, J., concurred.

ZAHRA, P.J. (*dissenting*). I respectfully dissent. I disagree with the majority's conclusion that the impairment defense statute, MCL 600.2955a, should be ignored because its application in this case renders an absurd or unjust result. I conclude that the majority has impermissibly utilized the "absurd or unjust result" method of statutory avoidance to substitute its judgment for that of the Legislature. I also disagree with the majority's conclusion that the trial court erred in failing to strike plaintiff's testimony regarding her percentage of fault. Finally, I do not conclude that the cumulative effect of the remaining errors alleged in this case warrants setting aside the judgment rendered below and ordering a new trial.

I do not subscribe to a method of statutory construction that allows deviation from the express language of a statute merely because a reviewing court may conclude that application of the statute renders an absurd or unjust result. *People v McIntire*, 461 Mich 147, 155-156, n 2; 599 NW2d 102 (1999) (explaining that departure from the literal construction of a statute where application may render an absurd or unjust result invites impermissible judicial law making). To the extent this method of statutory avoidance remains viable after our Supreme Court's condemna-

---

tion of a local ordinance as a claim of negligence. We cannot conclude from the record if this additional theory was the basis for allowing admission of the officer's testimony. Rather than address these issues in a vacuum without knowing the rationale underlying the trial court's decision, we remand these issues to the trial court, which is in a better position to address the remaining evidentiary issues anew.

tion of it in *McIntire*, application of the impairment defense statute to this case is neither absurd nor unjust.

The impairment defense statute was enacted as part of the tort reform package of 1996. In reforming our state's tort system, our Legislature enacted laws that promote personal responsibility for one's conduct. While both plaintiff and Burnham, the intoxicated driver of the van in which plaintiff was injured, were not legally permitted to consume alcohol, they were adults (over the age of eighteen) at the time of this accident. Certain duties attach to a person who reaches the age of majority. The most obvious duty attaching to the legal status of adulthood is the duty to obey the laws of the land. Failure to act within the law will result in the imposition of adult sanctions. I do not conclude that it is absurd for the Legislature to enact a law that prohibits an adult from bringing suit for injuries that are the result of that adult's illegal activities. This is the result reached in this case if the impairment defense is applied. Both plaintiff and Burnham knew or should have known they were precluded by law from consuming alcohol or illegal drugs.

It is also not absurd that this defense applies even where the illegal conduct is facilitated by the alleged tortfeasor. Rather, it is a policy choice made by the Legislature. Principles of separation of powers preclude us from rendering the Legislature's action void merely because we disagree with the result of its application. *Tyler v Livonia Public Schools*, 459 Mich 382, 393, n 10; 590 NW2d 560 (1999) (providing: "Our role as members of the judiciary is not to determine whether there is a 'more proper way,' that is, to engage in judicial legislation, but is rather to deter-

mine the way that was in fact chosen by the Legislature. It is the Legislature, not we, who are the people's representatives and authorized to decide public policy matters . . . ."). For these reasons, I conclude that the absurd or unjust result method of statutory avoidance has no application to the present case.

I also disagree with the majority's conclusion that the trial court erred in failing to strike plaintiff's testimony regarding her percentage of fault. The trial court was never asked to strike this testimony. Plaintiff's counsel failed to preserve this issue with a proper objection. Thus, appellate review is waived. We may review unpreserved error where manifest injustice results from our failure to review the issue. *Winters v Dalton*, 207 Mich App 76, 79; 523 NW2d 636 (1994). However, I conclude no manifest injustice results from our failure to review this claim of unpreserved error. When defense counsel entered this area of questioning, plaintiff's counsel asserted a general objection, without offering an evidentiary basis for the objection. The trial court asked defense counsel to rephrase the question. The question was then restated, without objection from plaintiff's counsel. Plaintiff's counsel was keenly aware of the sensitive nature of the questioning and consciously chose not to object to it. Under these circumstances we should conclude plaintiff's counsel chose not to pursue his objection as a matter of trial strategy. It is improper for this Court to find manifest injustice from an unpreserved error where it appears clear from the record that the decision not to preserve the issue was a matter of trial strategy.[1]

---

[1] I also conclude that the majority has misapplied the manifest injustice standard. The manifest injustice needed to ignore a litigant's failure to pre-

Finally, having rejected the above two arguments, I cannot conclude that the cumulative effect of plaintiff's remaining claims of error is sufficient to set aside the verdict rendered in this case. I would affirm.

---

serve an issue for appellate review should emanate from the claim of unpreserved error. *Winters, supra.* In this case, the majority finds manifest injustice, not from the fact that plaintiff testified that she was fifty percent at fault for her injuries, but from "the cumulative error present in this case." *Ante,* p 36, n 6.