*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KIM ORLANDO MARTIN,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 359467
Kent Circuit Court
LC No. 19-010203-FC

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

A jury convicted Kim Orlando Martin of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older), for sexually assaulting his 12-year-old daughter, ZG. As part of his sentence, the trial court ordered Martin to lifetime electronic monitoring (LEM) following his release from prison. Martin complains that this requirement constitutes an unconstitutional search, and that it amounts to cruel or unusual punishment. Other criminal defendants have raised the same challenges, and they have been rejected in binding precedent. Martin also asserts that his trial counsel provided constitutionally deficient assistance during the plea-bargaining process and at sentencing. He further challenges the assessment of 50 points for offense variable (OV) 13. We discern no error and affirm.

## I. BACKGROUND

ZG and her brothers (JG and KG) grew up with their adoptive mother, but regularly visited their biological parents—Martin and KM. ZG described that in 2019, when she was approximately 12 years old, Martin sexually assaulted her on several occasions. During a visit over the Labor Day weekend, ZG was watching television alone in the living room. Martin entered and asked ZG to help him look for the remote control. While ZG searched, Martin began touching her leg. When ZG sat down, Martin fondled ZG's legs, shoulders, and chest. Martin removed his pants, showed ZG his penis and ordered her to touch it. Martin forced ZG to perform fellatio on him and then forced penile-vaginal penetration. JG was sleeping in the basement, but awoke when heard Martin

moaning as if he was having sex. JG recorded audio of the assault on his phone while he stood on the basement stairs.

ZG detailed two earlier incidents in which Martin vaginally penetrated her with his penis—once in Martin's car while parked in an alleyway and once on a bed while ZG was visiting Martin and KM. The prosecution charged Martin with only one count of CSC-I arising from the vaginal penetration in the living room on Labor Day. The jury convicted Martin as charged.

ZG read a victim impact statement at Martin's sentencing hearing. The trial court also considered Martin's presentence investigation report (PSIR), which detailed four distinct penetrations of ZG by Martin: (1) oral penetration in the living room on Labor Day, (2) vaginal penetration in the living room on Labor Day, (3) vaginal penetration in an alleyway, and (4) vaginal penetration in a bedroom. The court assessed 25 points for OV 11 and 50 points for OV 13. Martin's trial counsel raised no objection to the accuracy or contents of the PSIR. The trial court sentenced Martin to 30 to 60 years' imprisonment and ordered LEM as required by MCL 750.520b(2)(b) and MCL 750.520n(1).

Martin filed a motion to remand with this Court, arguing that he was denied the effective assistance of counsel during the plea-bargaining process because his trial counsel failed to adequately inform him of the terms of a plea offer and that he could be convicted at trial on the victim's testimony alone. This Court granted Martin's motion,[1] and the trial court held a *Ginther*[2] hearing.

Martin's trial counsel, John Beason, testified he had spent nearly 90% of his 40-year career practicing criminal law. It had never been his practice to reject a plea offer before "telling the client." Furthermore, he would not "ever promise an outcome" at trial or "guarantee" what a jury's verdict at trial would be. Beason testified that he and Martin "met numerous times," the prosecution had offered Martin a "sentencing agreement of five years . . . on the minimum" sentencing guideline range if Martin pleaded "guilty as charged," and he reviewed the plea offer and the sentencing guidelines with Martin after the status conference. Beason explained to Martin that there was a "50/50" chance of conviction at trial because "it was his word against the victim's word" and he told Martin that he would be convicted "if the jury believed the victim." Martin contradicted each of these points in his testimony.

The trial court found Beason more credible than Martin and determined that Beason provided constitutionally effective assistance. The court reasoned:

> The Court is very familiar with Mr. Beason. I found his testimony today to be very credible; that he was offer—that he communicated to the defendant that he was offered a five-year sentencing agreement; that he related that to the defendant; that he discussed sentencing guidelines; that he indicated to the defendant that he—

---

[1] *People v Martin*, unpublished order of the Court of Appeals, entered August 1, 2022 (Docket No. 359467).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

they believed the young lady, they would find—the jury would more than likely find him guilty. If they believed him, they'd find him not guilty.

Evidently, they—he, Mr. Beason also testified they met many times. The Court finds no reason not to find Mr. Beason extremely credible.

Mr. Martin also testified. The Court does not find his testimony to be credible at all, quite frankly. It's very evident that he has what I would say, maybe not in legal terms, but buyer's remorse . . . .

It is my practice to make sure that I go over at status conferences all the offers with the defendant standing in front of me, next to his attorney, and the prosecutor here, so that everybody has a fair chance to hear what the plea is, and that the defendant has an understanding of what his options are.

*  *  *

He was given the option on the record by this Court . . . .

But the other issue is he says that he doesn't understand that Mr. Beason told him they could beat it, that Mr. Beason never told him that if they believe the young lady, they'd find him guilty.

This is not a defendant with the very first time he's ever set foot in a courtroom. This gentleman now has [19] convictions. He has five prior felonies, are—or four prior felonies plus this, for a total of five. He has [14] misdemeanors. He has been in jail [12] different times. He's been on probation two times.

I find it incredible for him to say he didn't understand that if the victim said he would—if the jury believed the victim, that he—he didn't think they would find him guilty, or find him not guilty. He's a very experienced individual, quite frankly. He's also very sophisticated. Most defendants could not even tell you what a no contest plea is. He certainly gave a good definition here. That also tells me his—the level of his sophistication.

Accordingly, the trial court denied Martin's motion for reinstatement of the plea offer.

II. OV 13

Martin contends that he is entitled to resentencing because the trial court erroneously scored OV 13 at 50 points. We review de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review for clear error the trial court's underlying factual findings, which "must be supported by a preponderance of the evidence." *Id.* "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted).

"[OV] 13 is continuing pattern of criminal behavior." MCL 777.43(1). The sentencing court must assess 50 points for OV 13 if the sentencing offense is CSC-I and "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age[.]" MCL 777.43(1)(a), (2)(d). The sentencing court must consider "all crimes within a 5-year period, including the sentencing offense . . ., regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). However, conduct scored under OV 11 or OV 12 may not be scored under OV 13 unless the offenses are "related to membership in an organized criminal group" or "gang-related." MCL 777.43(2)(c). OV 11 "is criminal sexual penetration," and the sentencing court must assess 25 points for OV 11 if one criminal sexual penetration, except the criminal sexual penetration "that forms the basis of a [CSC-I] . . . offense," arises out of the sentencing offense. MCL 777.41(1)(a), (2).

Here, the PSIR described four distinct penetrations, and Martin was sentenced for CSC-I as a result of his vaginal penetration of ZG in the living room on Labor Day. As Martin notes and the trial court's assessment of 25 points for OV 11 reflects, the Labor Day oral penetration arose from the sentencing offense and the trial court could not consider it in scoring OV 13. See MCL 777.41(1)(a), (2); MCL 777.43(2)(c). See also *People v Lampe*, 327 Mich App 104, 117-118; 933 NW2d 314 (2019) (holding that "three distinct acts of sexual penetration" arose out of the sentencing offense because they all occurred "during the same course of conduct").

However, there were still three other penetrations in the record to support the trial court's assessment of 50 points for OV 13. When assessing points for offense variables, the sentencing court may consider all record evidence, including the PSIR and witness testimony. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The PSIR and ZG's testimony described two other instances in which Martin vaginally penetrated ZG several weeks prior to the Labor Day sentencing offense. The trial court was required to consider the penetration underlying the sentencing offense as well as these two other instances because they occurred within a five-year period of the sentencing offense. See MCL 777.43(2)(a). The trial court properly considered information from the PSIR and ZG's testimony, which included ZG's description of the sentencing offense, the vaginal penetration in the alleyway, and the vaginal penetration on a bed. See *McChester*, 310 Mich App at 358.

## III. ASSISTANCE OF COUNSEL

Martin argues that he was denied the effective assistance of counsel during the plea-bargaining process and at sentencing. Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). We review for clear error a trial court's factual findings and review de novo questions of constitutional law. *Id*. "This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion . . . . An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013) (quotation marks and citation omitted).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15

(2016). Whether counsel performed reasonably is an objective question that "requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A "reasonable probability" that counsel's deficient performance affected the result of the proceeding "is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). We presume counsel was effective, and a defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

Martin first argues that Beason was ineffective because he failed to adequately inform Martin of the prosecution's plea offer or the consequences of rejecting the plea offer. "As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process," and a defendant making an ineffective assistance claim must meet the *Strickland* ineffective assistance standard to obtain relief. *People v Douglas*, 496 Mich 557, 592-593; 852 NW2d 587 (2014). The trial court held a *Ginther* hearing to consider Beason's performance during the plea-bargaining process and concluded that Beason provided constitutionally effective assistance. After hearing both Martin and Beason testify regarding the plea-bargaining process, the court found that Beason was "extremely credible" and Martin was not "credible at all." The court described that Martin was "a very experienced" and "very sophisticated" individual given his significant past experience with the court system. Accordingly, the court did not believe that Martin failed to understand that he could be convicted at trial "if the jury believed the victim[.]" Regard is given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C); *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). Additionally, the trial court noted that it had informed Martin of the plea offer on the record during a status conference and instructed Martin to discuss the offer with Beason. We have no ground to disturb the trial court's credibility assessment and discern no error in the court's factual findings. See *Shaw*, 315 Mich App at 672. The trial court did not abuse its discretion or err in denying Martin's motion to reinstate the plea offer.

Martin also asserts that Beason ineffectively failed to object to the trial court's scoring of OV 13. As discussed, the court did not err in assessing 50 points for OV 13. Any objection to this score would have been meritless. Counsel cannot be deemed ineffective for "[f]ailing to advance [this] meritless argument or raise a futile objection." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. LIFETIME ELECTRONIC MONITORING

Martin contends that the imposition of LEM upon his release from prison is unconstitutionally cruel or unusual punishment and amounts to an unreasonable search. However, as conceded by Martin, this Court rejected these exact challenges in *People v Hallak*, 310 Mich App 555, 566-581; 873 NW2d 811 (2015), rev'd in part on other grounds *People v Hallak*, 499 Mich 879; 876 NW2d 523 (2016). When the Supreme Court reversed this Court's decision in part

in *Hallak*, it left untouched the LEM analysis.  We are bound by this Court's prior published decision in this regard.  MCR 7.215(C)(2).[3]

       We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[3] We acknowledge Martin's argument that our reliance on "the judicially recognized recidivism rate" for sex offenders was improper because it was factually inaccurate given the recidivism rates discussed in recently released empirical studies.  See *People v Hallak*, 310 Mich App 555, 576; 873 NW2d 811 (2015).  However, Martin has failed to demonstrate that recidivism is not still a legitimate concern as it relates to released sex offenders.  While new research and empirical studies should always be welcomed, such public policy considerations and recommendations for the purpose of policy revisions should be directed at the Legislature rather than the courts.  *People v McIntire*, 461 Mich 147, 152; 599 NW2d 102 (1999) (stating that a court's "judicial role precludes imposing different policy choices than those selected by the Legislature"); *People v Morris*, 450 Mich 316, 336; 537 NW2d 842 (1995) ("[J]udicial misgivings regarding the wisdom of the policy do not provide a legal foundation for overriding legislative intent . . . .  The wisdom of the policy is a political question to be resolved in the political forum.  To reach a contrary result would be simply to repudiate the legislative choice.").