GILBERT v SECOND INJURY FUND (ON REMAND)

Docket No. 206733. Submitted October 2, 2000, at Lansing. Decided January 16, 2001, at 9:05 A.M. Leave to appeal sought.

Kevin Gilbert, a person with dual employment, sought worker's compensation benefits for an injury suffered during the course of his employment by Ronald L. and Rodney D. Kerber. Gilbert, the Kerbers, and the Kerbers' worker's compensation carrier, Farm Bureau Mutual Insurance Company, argued that the Second Injury Fund was responsible for one hundred percent of the benefits because the Kerbers, who paid Gilbert seven percent of his total average weekly wage while another employer paid Gilbert ninety-three percent of his total average weekly wage, did not report to the Internal Revenue Service the wages they paid to Gilbert. A magistrate and the Worker's Compensation Appellate Commission both agreed with the fund that it was impossible to apportion benefits between Gilbert's employments and that the "injury employer," the Kerbers, were one hundred percent responsible for all benefits based on Gilbert's earnings from both employers. Gilbert, the Kerbers, and Farm Bureau appealed by leave granted. The Court of Appeals reversed and remanded the matter, finding that the results reached in this case by applying MCL 418.372(2); MSA 17.237(372)(2) were absurd and therefore the subsection should not be applied in this case because the underlying purpose of § 372 would be violated by applying subsection 372(2) in this case. 237 Mich App 101 (1999). The Court of Appeals stated that it could not construe § 372 to prohibit consideration of the unreported wages paid by the injury employer and that those stipulated wages are to be considered in apportioning benefits as well as in determining the employee's total wages. The Supreme Court, in lieu of granting leave to appeal, vacated the Court of Appeals decision and remanded the matter to the Court of Appeals for reconsideration in light of *Sun Valley Foods Co v Ward*, 460 Mich 230 (1999), and *Tyler v Livonia Public Schools*, 459 Mich 382 (1999). 463 Mich 866 (2000). The Supreme Court stated that the Court of Appeals had decided not to apply subsection 372(2) without noting any ambiguity in the statutory language in contravention of the judiciary's limited role of complying with the will of the Legislature as reflected in the plain language of statutes. The Supreme Court ordered the

Court of Appeals, on remand, to follow the principles articulated in *Sun Valley* and *Tyler* and take note of the Court's discussion of the so-called "absurd result" rule of statutory construction in *People v McIntire*, 461 Mich 147 (1999).

On remand, the Court of Appeals *held*:

1. Statutes are to be construed as written regardless of the result, and statutory construction, as well as concerns about legislative intent, plays no role in the judicial process if the statutory language is unambiguous.

2. Neither MCL 418.372(1)(b); MSA 17.237(372)(1)(b) nor MCL 418.372(2); MSA 17.237(372)(2) is ambiguous.

3. Application of the statutes to the facts requires a holding that the fund is one hundred percent liable. The wages paid by the injury employer are zero because they were not reported to the IRS and under subsection 372(2) those wages are not to be considered for purposes of apportionment.

Reversed and remanded.

1. STATUTES — JUDICIAL CONSTRUCTION.

Statutes are to be construed as written regardless of the result; statutory construction, as well as concerns about legislative intent, plays no role in the judicial process if the statutory language is unambiguous.

2. WORKER'S COMPENSATION — DUAL EMPLOYMENT — SECOND INJURY FUND.

The worker's compensation act provides that where an employee having dual employment is injured in the course of employment with one of the employers, the injury employer is liable for the portion of the employee's weekly benefits equivalent to the portion of the employee's total wages paid by the injury employer; the Second Injury Fund is liable for the remainder of the weekly benefits after the benefits paid by the injury employer are subtracted from the total; however, because only wages reported to the Internal Revenue Service are considered for purposes of such apportionment, the fund may be one hundred percent liable for the benefits where the injury employer has not reported any wages to the IRS (MCL 418.372[1][b], [2]; MSA 17.237[372][1][b], [2]).

*Munroe and Nobach, P.C.* (by *Douglas S. Campbell*), for the plaintiffs.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*,

Assistant Attorney General, for the Second Injury Fund.

ON REMAND

Before: MARKEY, P.J., and McDONALD and FITZGERALD, JJ.

PER CURIAM. Our previous opinion in this case, *Gilbert v Second Injury Fund*, 237 Mich App 101; 603 NW2d 104 (1999), was vacated by our Supreme Court. 463 Mich 866 (2000). The order vacating our prior decision remanded the matter to this Court for reconsideration in light of language pertaining to judicial construction of statutes in *Sun Valley Foods Co v Ward*, 460 Mich 230; 596 NW2d 119 (1999), and *Tyler v Livonia Public Schools*, 459 Mich 382; 590 NW2d 560 (1999). The remand order directed this Court to follow the principles articulated in *Sun Valley* and *Tyler* and to take note of a discussion in *People v McIntire*, 461 Mich 147, 156, n 3; 599 NW2d 102 (1999), regarding the "problems inherent in the so-called 'absurd result' rule of statutory construction." 463 Mich 867. The order of remand pointed out that in our prior decision we declined to apply MCL 418.372(2); MSA 17.237(372)(2) without noting any ambiguity in the statutory language, and our Supreme Court reminded us that we may engage in judicial construction of a statute only if we first determine that the statutory language is ambiguous.

In our prior decision we concluded that the results reached in this case by applying MCL 418.372(2); MSA 17.237(372)(2) were absurd because applying the statute did not lead to a result apportioning liability between the employer and the Second Injury Fund,

contrary to our perception that our Legislature intended such an apportionment under § 372.

The factual and statutory background that led to our previous decision not to apply § 372 was set forth in our prior opinion:

> This worker's compensation case concerns the application of the dual employment provisions in MCL 418.372; MSA 17.237(372). Because under the stipulated facts of this case the employee, Kevin Gilbert, was injured in the course of his employment with an employer that did not report Gilbert's wages to the Internal Revenue Service, the magistrate and the Worker's Compensation Appellate Commission (WCAC) concluded that it was impossible to apportion benefits between Gilbert's employments and that the "injury employer" was one hundred percent responsible for all benefits based on Gilbert's earnings from all employers. This result was reached even though the injury employer paid only about seven percent of Gilbert's wages.
>
> The facts of this case were stipulated. Gilbert was injured on October 11, 1991, while working in a farm business owned by Ronald L. and Rodney D. Kerber. Farm Bureau Mutual Insurance Company was the Kerbers' worker's compensation carrier. At the time of his injury, Gilbert was also employed by the Hexcel Corporation. Gilbert's average weekly wage from Hexcel was about $875 while his average weekly wage from the Kerbers was about $64.
>
> As part of a wide-ranging amendment of the worker's compensation act in 1980, our Legislature amended MCL 418.371; MSA 17.237(371) and enacted MCL 418.372; MSA 17.237(327) to address the payment of compensation where injured employees held "dual employment." 1980 PA 357, effective January 1, 1982. Before the amendment, an injured employee holding more than one job was entitled to benefits based only on the earnings from the job causing the injury. *Finkbiner v ITT Building Service*, 189 Mich App 560, 563; 474 NW2d 148 (1991), lv den 439 Mich 970 (1992). Thus, an employee such as Gilbert would be entitled to benefits based on his wages earned in the lower paying

employment even though the disability caused by that employment resulted in the loss of wages from a much higher paying job as well.

MCL 418.371; MSA 17.237(371) was amended so that an employee's rate of benefit is based on the earnings in all the employee's employments as of the time of the injury. In an obvious effort to avoid hardship to the "injury employer," our Legislature enacted MCL 418.372; MSA 17.237(372) to apportion the payment of benefits between the "injury employer" and the "noninjury employer." The Second Injury Fund is responsible for paying the portion of benefits attributed to wages lost from the noninjury employer.

MCL 418.372(1)(b); MSA 17.237(372)(1)(b) provides:

"If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits."

Under this statute the fund would typically pay about ninety-three percent of the instant employee's benefits because that is the percentage of the employee's total wages paid by Hexcel, the noninjury employer.

However, this case is complicated by the stipulated fact that the injury employer did not report plaintiff's wages to the Internal Revenue Service. MCL 418.372(2); MSA 17.237(372)(2) provides:

"For purposes of apportionment under this section, only wages which were reported to the internal revenue service shall be considered, and the reports of wages to the internal revenue service are conclusive for the purpose of apportionment under this section."

The effect of this language is at the heart of this case.

The fund argues that because the Kerbers (the injury employer) reported none of Gilbert's earnings to the IRS, there is nothing to apportion and it follows that the injury

employer is one hundred percent responsible for Gilbert's worker's compensation benefits. The fund further argues that because the amount of those benefits is governed by MCL 418.371; MSA 17.237(371), and that statute bases benefits on all Gilbert's earnings and does not depend on whether earnings are reported to the IRS, the Kerbers are responsible for benefits based on a total average weekly wage of about $940 even though they paid Gilbert only $64 a week. The magistrate and the WCAC agreed with the fund.

Plaintiffs argue that the fund should be responsible for one hundred percent of Gilbert's worker's compensation benefits. According to plaintiffs, a strict reading of the plain language of § 372 is that the unreported income paid by the Kerbers is not to be considered, which makes Gilbert's earnings from Hexcel to be one hundred percent of the income to be apportioned. Because Hexcel is the noninjury employer and the fund is responsible for earnings attributable to the noninjury employer, the fund is responsible for one hundred percent of Gilbert's benefits. [237 Mich App 102-105.]

By way of additional background we note that in its application for leave to appeal to our Supreme Court the fund argued that, because the Kerbers reported none of Gilbert's earnings to the IRS, there is nothing to apportion and therefore the injury employer is one hundred percent responsible for Gilbert's benefits. That is the result previously reached by the magistrate and the WCAC.

Our Supreme Court's remand order directs us to language in recent opinions that emphasizes that statutes are to be construed as written regardless of the result and that statutory construction—as well as concerns about legislative intent—plays no role in the judicial process if the statutory language is unambiguous. In *Sun Valley* the Court said:

> The words of a statute provide the most reliable evidence
> of its intent. If the language of the statute is unambiguous,
> the Legislature must have intended the meaning clearly
> expressed, and the statute must be enforced as written. . . .
> Only where the statutory language is ambiguous may a
> court properly go beyond the words of the statute to ascer-
> tain legislative intent. [460 Mich 236 (citations and internal
> quotations omitted).]

To similar effect, the Court noted in *Tyler v Livonia
Public Schools*:

> Our role as members of the judiciary is not to determine
> whether there is a "more proper way," that is, to engage in
> judicial legislation, but is rather to determine the way that
> was in fact chosen by the Legislature. It is the Legislature,
> not we, who are the people's representatives and authorized
> to decide public policy matters such as this. To comply with
> its will, when constitutionally expressed in the statutes, is
> our duty. [459 Mich 392, n 10.]

The third case we were directed to consider, *People v
McIntire, supra,* again contains similar language
(quoting from the dissenting opinion of Judge (now
Justice) YOUNG in the Court of Appeals opinion in
*People v McIntire,* 232 Mich App 71, 119; 591 NW2d
231 [1998]):

> A fundamental principle of statutory construction is that
> "a clear and unambiguous statute leaves no room for judi-
> cial construction or interpretation." . . . When a legislature
> has unambiguously conveyed its intent in a statute, the stat-
> ute speaks for itself and there is no need for judicial con-
> struction; the proper role of a court is simply to *apply* the
> terms of the statute to the circumstances in a particular
> case. [461 Mich 152-153 (emphasis in original.)]

Judge YOUNG's dissenting opinion in *McIntire* was
also critical of the "absurd result" rule of statutory

construction. This "rule of statutory construction" was discussed in footnote 2 of Judge YOUNG's dissenting opinion. 232 Mich App 122. The rule of statutory construction was traced to *Church of the Holy Trinity v United States*, 143 US 457; 12 S Ct 511; 36 L Ed 226 (1892). The footnote states in part:

> [We] agree with Justice Scalia's description of such attempts to divine unexpressed and nontextual legislative intent as "nothing but an invitation to judicial lawmaking." This nontextual approach to statutory construction has unfortunately led [the Court of Appeals majority] away from the task of determining the *Legislature's* expressed intent. [232 Mich App 122, n 2 (emphasis in original, citation omitted).

When we apply these principles of construction, the result we reach is that the fund is one hundred percent liable. We do not find MCL 418.372(1)(b); MSA 17.237(372)(1)(b) or MCL 418.372(2); MSA 17.237(372)(2) ambiguous.

For purposes of this case, subsection 372(1) simply states: "Weekly benefits shall be apportioned as follows." Subsection 372(1)(b) is the applicable "as follows" provision. It provides that the injury employer is liable for the portion of the employee's weekly benefits equivalent to the portion of the employee's total wages paid by the injury employer. This is stated by describing a ratio as follows:

> [T]hat portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages.

We do not find this language ambiguous. However, when it is applied in the instant case, the wages paid by the injury employer are zero because those wages were unreported to the IRS and under subsection 372(2) those wages are not to be considered for purposes of apportionment.

Subsection 372(2) is not ambiguous. It states:

> For purposes of apportionment under this section, only wages which were reported to the internal revenue service shall be considered, and the reports of wages to the internal revenue service are conclusive for the purpose of apportionment under this section.

The "this section" referred to is MCL 418.372; MSA 17.237(372). "Apportionment" is provided for in subsection 372(1). Subsection 372(2) does not distinguish between injury and noninjury employers. Subsection 372(2) precludes consideration of unreported wages for purposes of apportionment. Thus, the portion of Gilbert's weekly benefits that is equivalent to the portion of the wages paid by the Kerbers is zero, because the wages paid by the Kerbers were unreported and therefore cannot be considered. The ratio is zero (numerator) over Gilbert's total average weekly wage (denominator), which equals zero.

The fund is liable for the "remainder" of Gilbert's weekly benefits after the benefits paid by the injury employer are subtracted from the total. In this instance, however, the "remainder" is one hundred percent of the weekly benefits.

The fund's contention is that the injury employer should be one hundred percent liable. That is the argument accepted by the magistrate and the WCAC and it is the argument the fund presented in its appli-

cation to our Supreme Court. The fund's reasoning is not acceptable because the statute can be applied under the given facts. The fund does not point to language in the statute supporting its position.

The decision of the WCAC is reversed and this matter is remanded for entry of an order consistent with this opinion. We do not retain jurisdiction. No costs are to be awarded because an issue of public significance concerning the construction of a statute is involved.