PEOPLE v MATELIC

Docket No. 220221. Submitted March 14, 2001, at Detroit. Decided December 21, 2001, at 9:00 A.M.

Stephan M. Matelic was convicted in 1988 in the Recorder's Court of Detroit, Craig S. Strong, J., of possession with intent to deliver 650 or more grams of a mixture containing cocaine and possession of a firearm during the commission of a felony and was sentenced to the then mandatory term of life imprisonment for the drug conviction and a consecutive two-year term for the felony-firearm conviction. The Court of Appeals affirmed the convictions. Unpublished opinion per curiam of the Court of Appeals, issued September 8, 1989 (Docket No. 105679). The Supreme Court denied the defendant's application for leave to appeal, 440 Mich 910 (1992), and his motion for rehearing, 441 Mich 894 (1992). After the Legislature's enactment of 1998 PA 314, which amended MCL 791.234 to provide the Parole Board with the authority to parole prisoners who were serving life sentences for selling or conspiring to sell a controlled substance, the defendant, through counsel, sent a letter to the Wayne County Prosecuting Attorney indicating a willingness to cooperate with law enforcement by meeting with a representative of the prosecutor's office. When the prosecutor's office did not arrange such an interview with the defendant, the defendant moved to have Judge Strong, now a judge of the Wayne Circuit Court, make a determination that the defendant had cooperated with law enforcement within the meaning of what is now MCL 791.234(10) and that the defendant was thus eligible for parole after having served fifteen years of his sentence. The prosecutor opposed the motion, arguing that an offer of cooperation made twelve years after the defendant's conviction was not the type of cooperation that the Legislature contemplated when it enacted MCL 791.234(10) and that, because the retroactive parole eligibility provisions of MCL 791.234(6) and MCL 791.234(10) mitigated the defendant's sentence, those subsections unconstitutionally impinged on the Governor's commutation power. The defendant argued that MCL 791.234(10) contained no temporal limitation on when an offer of cooperation must occur and that the Legislature's enactment of the parole eligibility provisions did not unconstitutionally impinges on the Governor's commutation power. The court denied the defen-

dant's motion for earlier parole consideration, holding that an offer to cooperate made twelve years after conviction did not satisfy the requirement of MCL 791.234(10) that a prisoner "has cooperated" with law enforcement. The court did not address the constitutional question raised by the prosecutor. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. 1998 PA 314 amended MCL 791.234(6) by deleting the provision in that subsection that precluded the granting of parole to a prisoner serving a life sentence for a major drug offense and by specifically providing that a prisoner who is serving a life sentence for selling or conspiring to sell a controlled substance is eligible for parole after having served 20 years of the sentence if the prisoner had a conviction for some other serious crime or after having served 17½ years of the sentence if the prisoner did not have a conviction for some other serious crime. 1998 PA 314 also added MCL 791.234(10), which makes a prisoner eligible for parole 2½ years earlier than the eligibility dates created by MCL 791.234(6) if the sentencing judge or a successor determines that the prisoner "has cooperated with law enforcement." MCL 791.234(10) further provides that a prisoner is considered to have cooperated with law enforcement if the court determines that "the prisoner has no relevant or useful information to provide."

2. Although MCL 791.234(10) clearly contemplates that the sentencing court must determine whether the defendant has cooperated with law enforcement at some time before the court is called on to make its determination, there is nothing in the language of that subsection setting a temporal limitation with respect to a defendant's opportunity to cooperate. Accordingly, the trial court erred in holding that the defendant's delay in making his offer to cooperate with law enforcement precluded the possibility of finding that the defendant had cooperated with law enforcement within the meaning of MCL 791.234(10).

3. Because MCL 791.234(10) nowhere defines what is meant by the word "cooperate" and the meaning in the statute is in reasonable dispute, it is appropriate to consult dictionary definitions. To "cooperate" means "to work or act together or jointly for a common purpose or benefit" or "to work or act with another or other persons willingly and agreeably."

4. MCL 791.234(10) does not appear to limit the subject or topic of a defendant's cooperation. However, because the statute refers to cooperation with law enforcement, it can be inferred that a defendant's proffered information must potentially relate to the prevention of crime or the protection of public safety. Accordingly,

where a defendant provides some information potentially pertinent to law enforcement duties, cooperation has occurred for purposes of MCL 791.234(10).

5. An offer to cooperate is not the equivalent of actual cooperation. Because an unsubstantiated general expression of an intent to cooperate, without more, is insufficient to satisfy the requirement of MCL 791.234(10) that a defendant has cooperated with law enforcement, the matter must be remanded to the trial court for the purpose of conducting a hearing to determine whether the defendant could provide law enforcement any specific information potentially germane to the execution of law enforcement duties. The court must find that the defendant has cooperated with law enforcement if the defendant provides any specific information pertaining to the execution of law enforcement duties, even if law enforcement deems the information provided to be irrelevant to any current law enforcement duty or investigation or otherwise has no use for the information.

6. The Legislature's authorization of parole eligibility for prisoners already convicted of drug offenses that carried a life sentence without a chance of parole does not encroach on the Governor's constitutional power to commute sentences. The Legislature apparently enacted 1998 PA 314 to create uniformity in sentences for prisoners serving life sentences for controlled substances convictions, to alleviate to some degree prison overcrowding, to save taxpayers the expense of lifetime incarceration, and to reduce the possibility that violent felons might obtain release on parole because of overcrowding caused by the fact that nonviolent drug offenders could not be released on parole. Because the primary purposes for the enactment of 1998 PA 314 all serve the public good, the Legislature acted properly, even though the granting of such parole power might incidentally reduce the prison terms of prisoners previously convicted of drug offenses that carried life sentences without the possibility of parole.

Reversed and remanded.

WILDER, J., dissenting in part, stated that the trial court's order holding that the defendant's offer of cooperation made more than a decade after conviction did not constitute having cooperated with law enforcement within the meaning and intent of MCL 791.234(10) should be affirmed. The statute clearly contemplates that a defendant must have cooperated with law enforcement before seeking the benefit offered by MCL 791.234(10) by providing relevant and useful information, if such information is possessed. An offer of stale information will not satisfy the cooperation requirement of MCL 791.234(10) if a sentencing court determines that a defendant

possessed the information when it was still relevant and useful, but failed to offer the information to law enforcement before it became stale. Because the trial court properly found that the defendant's offer to cooperate was not the equivalent of actual cooperation, the trial court properly determined that the defendant had not satisfied the requirements of MCL 791.234(10). Because the defendant has failed to aver any information that might constitute cooperation, remand to the trial court for an evidentiary hearing is not warranted.

1. CRIMINAL LAW — SENTENCES — CONTROLLED SUBSTANCES — LIFE SENTENCES — PAROLE.

The provision of the Department of Corrections act that reduces the period before a defendant sentenced to life imprisonment for a controlled substance conviction is eligible for parole where the defendant has cooperated with law enforcement clearly contemplates that the defendant already has cooperated with law enforcement before seeking a court's determination that there has been cooperation; however, there is nothing in the language of that provision that sets a temporal limitation with respect to when a defendant must undertake the cooperation (MCL 791.234[10]).

2. WORDS AND PHRASES — COOPERATE — SENTENCES — CONTROLLED SUBSTANCES — PAROLE.

To "cooperate" within the meaning of the provision of the Department of Corrections act that reduces the period before a defendant sentenced to life imprisonment for a controlled substance conviction is eligible for parole where the defendant has cooperated with law enforcement means to work or act together or jointly for a common purpose or benefit or to work or act with another or other persons willingly and agreeably; cooperation within the meaning of that provision occurs where a defendant provides to law enforcement information potentially pertinent to law enforcement duties (MCL 791.234[10]).

3. CRIMINAL LAW — SENTENCES — PAROLE — COOPERATION WITH LAW ENFORCEMENT.

An offer to cooperate with law enforcement is not the equivalent of actual cooperation with law enforcement; an unsubstantiated general expression to law enforcement by a defendant of an intent to cooperate with law enforcement, without more, is insufficient to satisfy the cooperation requirement of the provision of the Department of Corrections act that reduces the period that a defendant sentenced to life imprisonment for a controlled substance conviction must wait before becoming eligible for parole by reason of the defendant's cooperation with law enforcement (MCL 791.234[10]).

4. CRIMINAL LAW — SENTENCES — PAROLE — CONSTITUTIONAL LAW — COMMU-
   TATION OF SENTENCES.
   The Legislature's authorization of parole eligibility for prisoners
   already convicted of drug offenses that formerly carried a
   mandatory life sentence without a chance of parole does not
   encroach on the Governor's constitutional power to commute
   sentences (Const 1963, art 4, § 45; MCL 791.234[6], 791.234[10]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Don W. Atkins*, Principal Attorney, Appeals, for the people.

*Mogill, Posner & Cohen* (by *Kenneth M. Mogill*), for the defendant.

Before: GAGE, P.J., and CAVANAGH and WILDER, JJ.

GAGE, P.J. Defendant appeals by leave granted the trial court's order denying his motion for earlier parole consideration. We reverse and remand for further proceedings.

I

Following an October 1987 jury trial, defendant was convicted of possession with intent to deliver 650 or more grams of a mixture containing cocaine, MCL 333.7401(2)(a)(i), and possession of a firearm during the commission of a felony, MCL 750.227b. On November 3, 1987, the trial court sentenced defendant to a mandatory term of life imprisonment for the possession with intent to deliver conviction and a consecutive two-year term for the felony-firearm conviction. This Court later affirmed defendant's convictions, *People v Matelic*, unpublished opinion per curiam of the Court of Appeals, issued September 8,

1989 (Docket No. 105679), and the Supreme Court denied defendant's application for leave to appeal, *People v Matelic*, 440 Mich 910; 491 NW2d 814 (1992), and motion for rehearing, *People v Matelic*, 441 Mich 894; 495 NW2d 386 (1992).

In 1987 when defendant committed the crime and was convicted, MCL 333.7401(2)(a)(i) provided that an individual found guilty of possessing with the intent to deliver any mixture containing cocaine that weighed 650 grams or greater would receive a mandatory sentence of life imprisonment. Furthermore, at the time of defendant's conviction and sentence the parole eligibility statute precluded any possibility of parole for the individual sentenced to a mandatory life term "for a major controlled substance offense." Formerly MCL 791.234(4), currently MCL 791.234(6). These unyielding sentences reflected the Legislature's attempt to stem Michigan-related trafficking in controlled substances and to diminish the prevalent and deleterious consequences that such trafficking in, abuse of, and addiction to controlled substances imposed on society. *People v Bullock*, 440 Mich 15, 55, 66 (RILEY, J., concurring in part and dissenting in part), 73 (BOYLE, J., concurring in part and dissenting in part); 485 NW2d 866 (1992); *People v Gorgon*, 121 Mich App 203, 206-207; 328 NW2d 619 (1982).

In 1998, the Legislature revisited the question of mandatory life imprisonment for traffickers in mixtures of controlled substances in amounts weighing 650 grams or more. The Legislature passed two bills that mitigated somewhat the "drug lifer" law. 1998 PA 319 amended MCL 333.7401(2)(a)(i) .to remove this subsection's mandatory life imprisonment language,

instead authorizing punishment "for life or any term of years but not less than 20 years." 1998 PA 314 amended MCL 791.234(6) by deleting the subsection's explicit exclusion of violators of MCL 333.7401(2)(a)(i) from parole consideration and by specifically providing for parole eligibility for such an offender after twenty years' imprisonment if the offender "has another conviction for a serious crime," or after 17½ years' imprisonment if the offender "does not have another conviction for a serious crime."[1] 1998 PA 314 also created MCL 791.234(10),[2] which permits an offender convicted under MCL 333.7401(2)(a)(i) who was sentenced to life imprisonment earlier parole eligibility, 2½ years earlier than the periods set forth in MCL 791.234(6), when the sentencing court or its successor finds that the offender "has cooperated with law enforcement."

Seeking to avail himself of the Legislature's newly fashioned parole eligibility provisions, defendant through his counsel sent the Wayne County Pros-

---

[1] MCL 791.234(6) currently provides in relevant part as follows:

A prisoner under sentence for life, . . . except as provided in subsection (10), who has served 20 calendar years of the sentence in the case of a prisoner sentenced to imprisonment for life for violating or conspiring to violate section 7401(2)(a)(i) of the public health code . . . who has another conviction for a serious crime, or, except as provided in subsection (10), who has served 17½ calendar years of the sentence in the case of a prisoner sentenced to imprisonment for life for violating or conspiring to violate section 7401(2)(a)(i) of the public health code . . . who does not have another conviction for a serious crime . . . is subject to the jurisdiction of the parole board and may be released on parole by the parole board . . . .

The definition of a "serous crime" appears within MCL 791.234(11)(a).

[2] Current subsection 10 was designated subsection 10 in 1998 PA 314, but became subsection 9 following the amendments of 1998 PA 512, only to again become subsection 10 following the amendments of 1999 PA 191.

ecuting Attorney a January 19, 1999, letter expressing defendant's "willingness to 'cooperate with law enforcement' " by meeting "with any designated representative of [the prosecutor's] office for the purpose of providing . . . such assistance as you may request." No representative of the prosecutor's office ever arranged to interview defendant, because it was believed that after twelve years' imprisonment it was unlikely that defendant possessed any useful information regarding the 1987 events surrounding defendant's conviction.

In February 1999, defendant filed a motion seeking to have the trial judge that sentenced him make a determination regarding defendant's willingness to cooperate with the authorities. Defendant reasoned that according to the clear language of MCL 791.234(10), the determining factor with respect to cooperation constituted the willingness of a prisoner serving a life sentence for selling a controlled substance to speak with law enforcement personnel, "not whether that openness and willingness to talk to law enforcement leads to any results." Defendant further clarified that he remained willing to cooperate with the police, the prosecutor's office, or the trial court.

The prosecutor replied that defendant should have offered some information at the time of his 1987 conviction and that defendant's 1999 letter represented a disingenuous attempt to qualify for earlier parole eligibility. The prosecutor suggested that the Legislature contemplated that a defendant's cooperation would involve the defendant's disclosure of other drug contacts "who, presumably, have not yet been charged or who are unknown to law enforcement." The prosecutor also asserted that the retroactive parole eligi-

bility provisions within MCL 791.234(6) and (10) miti-
gated defendant's sentence and therefore unconstitu-
tionally infringed the Governor's commutation power.

Defendant responded that no language within MCL
791.234(10) supported the prosecutor's proffered
interpretation that any offer of cooperation must
occur temporally near a defendant's arrest. Defendant
proposed to the contrary that in light of the explicit
retroactive application of the statute and the ex-
pressed lack of concern regarding the relevance of
the information offered by the cooperating defendant,
the statute clearly applied to any defendant who
expresses a willingness to advise law enforcement
personnel of "whatever he or she knows" "regardless
of the age, relevance or usefulness of the information
offered." With respect to the prosecutor's constitu-
tional challenge to the early parole scheme, defendant
argued that the prosecutor lacked standing to set
forth an alleged violation of the Governor's commuta-
tion power. Defendant urged that the Legislature's
enactment of parole eligibility provisions did not con-
stitute a modification of the underlying life sentences.
Defendant lastly argued that even if the parole eligi-
bility provisions infringed somewhat the Governor's
commutation power, this minor interference re-
mained constitutional because the Legislature acted
pursuant to its own constitutional police power to
alleviate the unduly harsh penalty imposed on an
entire class of prisoners.

The trial court denied defendant's motion for ear-
lier parole consideration because it did not agree that
he had cooperated as the statute intended. The court
reasoned as follows:

> This present offer is distinguishable from the statutory requirement which states ". . . that the prisoner . . . *has* cooperated with law enforcement." MCL 7[9]1.234(9) . . . Emphasis added. Prior to the amendment of the law, there was no record to support any cooperation by the defendant in this matter. The court is not convinced that an offer to cooperate twelve years subsequent to a conviction satisfies the statutory requirement.

The court did not address in its ruling the constitutionality of the parole eligibility provisions.

II

Defendant first contends that the trial court erred in finding his January 1999 offer to meet with a representative of the prosecutor's office insufficient cooperation to qualify him for earlier parole under MCL 791.234(10). We review de novo legal questions involving statutory interpretation. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

A

Well-established principles guide our statutory construction.

> In [construing statutes], our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. [*People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999) (citations omitted).]

In determining the plain meaning of statutory language, " '[t]he fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern,' . . . and as far as possible, effect must be given to every word, phrase, and clause in the statute." *Id.* at 330, quoting *People ex rel Twitchell v Blodgett*, 13 Mich 127, 168 (1865) (COOLEY, J.).

The disputed statutory subsection that creates the possibility of earlier parole in the event that the life-sentenced defendant cooperates provides as follows:

> *If the sentencing judge,* or his or her successor in office, *determines on the record that a prisoner* described in subsection (6) sentenced to imprisonment for life for violating or conspiring to violate section 7401(2)(a)(i) of the public health code, 1978 PA 368, MCL 333.7401, *has cooperated with law enforcement, the prisoner is subject to the jurisdiction of the parole board* and may be released on parole as provided in subsection (6), *2½ years earlier* than the time otherwise indicated in subsection (6). *The prisoner is considered to have cooperated with law enforcement if the court determines on the record that the prisoner had no relevant or useful information to provide.* The court shall not make a determination that the prisoner failed or refused to cooperate with law enforcement on grounds that the defendant exercised his or her constitutional right to trial by jury. If the court determines at sentencing that the defendant cooperated with law enforcement, the court shall include its determination in the judgment of sentence. [MCL 791.234(10) (emphasis added).]

Our application of the statute under the circumstances of this case requires that we confront several questions regarding the meaning of the statute.

B

We first address the issue *when* the cooperation
noted by the statute must occur to qualify a defen-
dant for parole 2½ years earlier. The trial court con-
cluded that defendant's offer to speak with the pros-
ecutor did not constitute sufficiently timely coopera-
tion because it occurred only after the Legislature's
1998 amendments of MCL 791.234. We find within the
statute no support for the trial court's interpretation
that a defendant's cooperation must have occurred
before the Legislature's enactment of 1998 PA 314.
The statute clearly contemplates that the trial court
must determine that a defendant "*has cooperated* with
law enforcement" at some point in the past, but lacks
any language whatsoever prescribing an appropriate
window of opportunity during which the cooperation
must have occurred. Our engrafting onto the statute a
temporal limitation with respect to a defendant's
opportunity to cooperate, where one otherwise
plainly cannot be ascertained within the statutory lan-
guage, would infringe improperly the Legislative
authority to promulgate laws. See *In re Juvenile
Commitment Costs*, 240 Mich App 420, 427; 613
NW2d 348 (2000) ("Nothing may be read into the stat-
ute that is not within the manifest intent of the Legis-
lature as gathered from the act itself.").

The prosecutor, in a contention that we find some-
what appealing to our sense of logic, argues in sup-
port of the trial court's temporally restrictive interpre-
tation of MCL 791.234(10) as follows:

    Any offers of cooperation would necessarily refer to nam-
ing individuals with whom the defendant conspired in the
illicit drug trade. This would, of course, relate to his first-

> hand knowledge of those with whom he had contact and
> who, presumably, have not yet been charged or who are
> unknown to law enforcement. Thus, any offer of "coopera-
> tion" must necessarily relate to people and events close in
> time to the defendant's arrest—not twelve years later. At
> this point, any "information" which [defendant] may offer
> would be hopelessly stale or perhaps even contrived.

If the Legislature in enacting 1998 PA 314 shared any
of these thoughts of the prosecutor, however, the
Legislature for one reason or another ultimately failed
to draft 1998 PA 314 to achieve the result imagined by
the prosecutor. As we observed above, the Legislature
incorporated no temporal limitation of a defendant's
opportunity to cooperate with law enforcement.

Furthermore, the plain and unambiguous language
of the statute defeats the prosecutor's suggestion that
cooperation cannot exist when a defendant offers
stale advice or information otherwise unhelpful to
law enforcement.[3] MCL 791.234(10) plainly provides
that a *"prisoner is considered to have cooperated
with law enforcement if* the court determines on the
record that *the prisoner had no relevant or useful
information to provide."* (Emphasis added.) Conse-
quently, we must interpret the statute to achieve the
plain legislative intent that a law enforcement or judi-
cial characterization or perception of a defendant's
information as insignificant or unworthy cannot
weigh against a finding that the defendant nonethe-
less cooperated. *Morey, supra.* We conclude that the
trial court improperly interpreted MCL 791.234(10) to
preclude the possibility of defendant's cooperation on

---

[3] The prosecutor posits that "[o]ffers to cooperate with law enforce-
ment must necessarily have some value no matter how insignificant in the
investigation of crime."

the basis of its staleness or tardiness. The trial court's interpretation read too much into the otherwise plain language of the statute.

C

Despite our many references to cooperation, we have to this point not considered the meaning of "cooperation" or "cooperate" as used in MCL 791.234(10), the question to which we now turn. Because the statute nowhere defines "cooperate," other than indicating that cooperation is deemed to occur when "the prisoner had no relevant or useful information to provide," and because the scope of appropriate cooperation appears reasonably disputed and therefore ambiguous, *In re Juvenile Commitment Costs, supra,* we consulted dictionary definitions to aid our goal of construing the terms of the statute in accordance with their ordinary and generally accepted meanings. *Morey, supra.* To "cooperate" means "to work or act together or jointly for a common purpose or benefit" or "to work or act with another or other persons willingly and agreeably," and "cooperation" similarly means "more or less active assistance from a person." *The Random House Dictionary of the English Language: Unabridged Edition* (1971), p 321.

The statute appears not to limit the subject or topic of a defendant's cooperation. For instance, the statute does not expressly anticipate cooperation involving only information regarding trafficking in controlled substances. Because the statute refers to cooperation with law enforcement, however, we find that we reasonably may infer from this language that a defendant's proffered information must somehow poten-

tially relate to the duties of law enforcement, i.e., to prevent crime and to protect public safety. Given the lack of direction and specificity of the statute, however, we cannot conclude that cooperation would not likewise encompass a defendant's willingness to act as an undercover agent or informant, to provide advice to law enforcement regarding some general knowledge of criminal enterprises irrelevant to any one particular crime or investigation, or to offer to answer telephones at a jail or police precinct, to name just a few possibilities.

Although we searched the available legislative history for guidance in interpreting the intended meaning of "cooperate," as used in MCL 791.234(10) we located only echoes of our own confusion regarding the Legislature's intent in drafting this subsection. We empathize with the expression of the difficulties and the uncertainties with the cooperation provision that is reflected in the following passage from a second legislative analysis:

> The provisions of Senate Bill 281 that allow for the early release of a prisoner who has "cooperated with law enforcement" are extremely vague . . . and will likely result in a flood of appeals. In essence, a prisoner who was determined to have "cooperated" with law enforcement would be eligible for parole 2½ years earlier than the 20- or 17½-year minimum. *Unfortunately, the bill contains no specific information regarding what sort of cooperation would be expected and when it would be expected.* In fact, the bill contains only two limitations—that a defendant's exercise of his or her constitutional right to a trial by jury could not be treated as a failure or refusal to cooperate, and that a prisoner could be considered to have cooperated if a court determined that the prisoner had no relevant or useful information to provide. *The lack of further information, definitions, or guidelines raises many questions. What is*

*"relevant or useful information?"* Relevant and useful to whom and for what? Relevant and useful to the crime being prosecuted? Relevant and useful to the prosecution of drug crimes in general? To crime in general? Presumably, the intent is to help prosecutors obtain information on others involved in the illegal drug trade, but this is not specified in the bill. Without clarification, it could be reasonably argued that a prisoner should only be deemed to have failed to cooperate when he or she refused to provide information that was "relevant and useful" to the specific crime for which he or she was accused. Equally supportable arguments could be made for interpretation of "relevant and useful" as covering information of other drug-related crimes or even non-drug related crimes. Less effective arguments could be made for stretching the definition even further—what about information on illegal aliens? Information that might help the local sheriff or judge in his or her campaign for re-election? Obviously a line should be drawn—at some point such information would no longer be appropriate—but without language in the bill to define "relevant and useful information," that line will have to be set through the appellate process in the courts of this state and possibly the United States.

\*          \*          \*

. . . Relevance and usefulness depend upon context . . . and the bill leaves provision of a context to the inference of the reader. . . . [House Legislative Analysis, HB 4065 & SB 281, (Second Analysis), January 26, 1999, pp 9, 10 (emphasis added).]

Fortunately, our decision in this case does not demand that we undertake the enormous task of enumerating every conceivable example of law enforcement assistance that could constitute cooperation under MCL 791.234(10).

This defendant apparently intended to assist law enforcement by providing them some information. We merely conclude that despite the uncertain legislative

intent regarding the type of cooperation anticipated
from defendants with life sentences for controlled
substances convictions, where a defendant provides
some information potentially pertinent to law en-
forcement duties, cooperation has occurred for pur-
poses of MCL 791.234(10). We recognize that a defen-
dant's provision of sports scores, stock market infor-
mation, or entertainment gossip clearly would fall
beyond the scope of MCL 791.234(10) because such
information would possess no conceivable potential
to aid any law enforcement activity. To deem "cooper-
ate[] with law enforcement" to include a defendant's
offer of information regarding any subject however
far removed from applicability to law enforcement
would create the absurd result that a defendant with
no intent to assist law enforcement could provide the
police with information totally unrelated to law
enforcement and yet earn entitlement to parole eligi-
bility 2½ years earlier. *People v Stephan*, 241 Mich
App 482, 497; 616 NW2d 188 (2000) (noting that stat-
utes should be construed to prevent absurd results).[4]
We urge the Legislature to review our interpretation
of MCL 791.234(10) and to clarify to what extent it
expected a defendant to cooperate.

D

In this case defendant proposed "to meet with any
designated representative of [the prosecutor's] office

---

[4] We note that two recent cases criticize the "absurd result" rule of stat-
utory interpretation when applied by courts that did not first detect any
statutory ambiguity that the absurd result rule would help resolve. *People
v McIntire*, 461 Mich 147, 155-157, nn 2 & 3; 599 NW2d 102 (1999); *Gilbert
v Second Injury Fund (On Remand)*, 244 Mich App 326, 331-333; 625
NW2d 116 (2001). We further note that in this case we have found ambigu-
ous the term "cooperate."

for the purpose of providing you with such assistance as you may request," and the defense counsel at the trial court hearing regarding cooperation advised the court that defendant's offer remained open. The trial court did not consider, however, to what extent defendant might be able to assist law enforcement.

We agree with the trial court's suggestion that an offer to cooperate is not the equivalent to actual cooperation. We wish to emphasize the distinction between a defendant's mere general expression of intent to offer law enforcement some unspecified assistance, as defendant made in this case, and a defendant's demonstration of some specific information or assistance that he extended to some law enforcement employee. We find an unsubstantiated general expression of intent to cooperate, without more, insufficient to satisfy the statutory definition of cooperation with law enforcement.

Because we cannot determine from the instant record exactly what information or assistance defendant intended to lend the prosecutor, we must remand to the trial court for the purpose of conducting a hearing to determine whether defendant could provide law enforcement any specific information potentially germane to the execution of law enforcement duties. According to the plain statutory language, which we are bound to enforce, the trial court shall deem defendant to have cooperated if he provides law enforcement any specific information pertaining to the execution of law enforcement duties, even if law enforcement ultimately deems the information irrelevant to its current duties or investigations or otherwise has no use for the information.

III

Defendant next argues that the 1998 legislative
enactments providing parole eligibility for prisoners
previously sentenced to mandatory terms of life
imprisonment without parole do not unconstitution-
ally burden the gubernatorial clemency powers. We
review constitutional questions de novo. *People v
Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999).
Although the trial court's failure to consider this issue
renders it unpreserved, we nonetheless consider this
claim of constitutional error because it involves a dis-
positive legal question and the record is factually suf-
ficient.[5] *People v Grant*, 445 Mich 535, 546-547; 520
NW2d 123 (1994); *People v Brown*, 220 Mich App 680,
681; 560 NW2d 80 (1996).

The prosecutor argued before the trial court and
maintains on appeal that the Legislature's extension
of parole eligibility to all defendants sentenced to life
sentences for controlled substances convictions
before the enactment of 1998 PA 314 qualified as a
sentence modification that violated the Governor's
exclusive constitutional commutation power, Const
1963, art 5, § 14. Defendant responds that the parole
eligibility provisions of 1998 PA 314 do not constitute
modifications of the existing life sentences. Defen-
dant further replies that even viewing the act's
authorization of parole as a sentence modification for
one class of prisoners, the act nonetheless qualifies as
constitutional because it falls within the Legislature's

---

[5] We note that in the January 14, 2000, order granting defendant's appli-
cation for leave to appeal, this Court directed that defendant "brief the
issue of the constitutionality of MCL 791.234([10]) in light of the gover-
nor's power of commutation."

constitutional police power authority and did not otherwise restrict the Governor's clemency powers.

A

In two cases that we find instructive, the Supreme Court considered whether legislative acts affecting the terms of prisoners' and jail inmates' confinements unconstitutionally assumed the Governor's commutation power. In *Oakland Co Prosecuting Attorney v Dep't of Corrections*, 411 Mich 183, 186; 305 NW2d 515 (1981), the Court addressed the Prison Overcrowding Emergency Powers Act. The act permitted "the Governor to declare a state of emergency whenever prison population exceeds available bed space for 30 consecutive days," and "on this declaration, for the Director of the Department of Corrections to reduce the minimum terms of those prisoners who have established minimum terms by 90 days." *Id.* at 188-189. The Supreme Court held, *id.* at 195, that irrespective of whether it characterized the release of prisoners under the act a commutation, the act qualified as constitutional because it fell within the Legislature's authority under Const 1963, art 4, § 45 "to provide for the 'release of persons imprisoned or detained on [indeterminate] sentences.'" The Court explained that legislative sharing of the commutation power was authorized by Const 1963, art 4, § 45, and concluded as follows:

> The legislative history available to us demonstrates that a commutation in derogation of the Governor's power was not intended; instead this legislation was part of a broadbased effort at correctional reform. *The purpose of the instant legislation is to reduce the intolerable level of overcrowding which characterizes Michigan's prison system.*

As part of a broad-based effort at correctional reform, it was intended to deal with a systemwide problem. *Although the retroactive reduction of minimum sentences because of prison overcrowding has consequences similar to commutation, it derives from a wholly separate constitutional grant of power.* The legislation was within the constitutional grant of authority to the Legislature in art 4, § 45 . . . . Further, *the Legislature has done nothing to directly interfere with the Governor's function; he remains free to pardon or commute the sentences of individual prisoners as he, in his discretion, feels the circumstances warrant.* [*Oakland Co Prosecuting Attorney, supra* at 196-197 (emphasis added).]

Six years later, the Supreme Court addressed whether the county jail overcrowding act infringed the Governor's power of executive clemency. *Kent Co Prosecutor v Kent Co Sheriff (On Rehearing),* 428 Mich 314, 317; 409 NW2d 202 (1987). The county jail act permitted reduction of "low-risk" inmates' terms of incarceration when certain emergency conditions arose. *Id.* at 317-318.[6] The Court initially considered whether the act served a proper legislative purpose,

---

[6] The Supreme Court summarized the workings of the county jail overcrowding act as follows:

The jail overcrowding act directs a county sheriff to declare a jail overcrowding state of emergency when the general prisoner population of a county jail exceeds one hundred percent of the rated design capacity of the jail. Upon a declaration of emergency, the sheriff is directed to notify designated county executive and judicial officers of the emergency and is exhorted to reduce the prison population by existing legal means such as pretrial diversion, reduction in the bonds of prisoners, and use of day parole. If these steps do not reduce the jail population sufficiently to eliminate jail overcrowding, the sheriff is directed to supply the chief circuit judge of the county with the name of each prisoner, along with the details of the prisoner's sentence and the offense for which he was convicted. The chief judge is directed to classify the prisoners into two categories, those whose release would present a high risk to the public safety, and those whose release would not present such a risk. The sheriff is then directed to reduce the sentences of the

finding that the purpose of the act, "to reduce or elim-
inate the evils fostered by overcrowded jails," fell
within the Legislature's plenary power over matters
affecting public health and welfare, specifically Const
1963, art 4, § 51. *Kent Co Prosecutor, supra* at 319-
321.

The Supreme Court next ascertained whether the
act nonetheless had the effect of unduly interfering
with the Governor's commutation power. *Id.* at 321-
324. The Court preliminarily noted that "it is not nec-
essarily fatal to this legislation that, when considered
in a vacuum, it appears to interfere with the Gover-
nor's executive powers." *Id.* at 321. According to con-
stitutional separation of powers principles,

> "the proper inquiry focuses on the extent to which [the act]
> prevents the Executive Branch from accomplishing its con-
> stitutionally assigned functions. Only where the potential
> for disruption is present must we then determine whether
> that impact is justified by an overriding need to promote
> objectives within the constitutional authority of Congress."
> [*Id.* at 322 (emphasis omitted), quoting *Nixon v Adminis-
> trator of General Services*, 433 US 425, 443; 97 S Ct 2777; 53
> L Ed 2d 867 (1977).]

The Court concluded that the jail overcrowding act
did not authorize commutations violative of the Gov-
ernor's constitutional powers because commutations
are acts of individualized clemency reflecting a spe-
cific prisoner's personal characteristics and behavior,
distinguishable from the sentence reductions under
the act that are prompted by generalized jail condi-
tions. *Id.* at 323-324. The Court explained that the

---

low-risk prisoners by an equal percentage, set by the chief circuit
judge, until the overcrowding is alleviated. [*Id.* at 317-318.]

extent of a jail overcrowding emergency, not the inmates' individual characteristics, governed the number of inmates benefiting from sentence reductions and observed the different goals served by commutation, which benefits one prisoner exclusively, and the jail overcrowding act, which by reducing overcrowded jails would benefit the earlier-released inmates and those inmates remaining incarcerated. *Id.* at 324.

B

We first consider whether in this case a proper legislative purpose supported 1998 PA 314. The legislative history reflects several arguments in favor of the Legislature's passage of 1998 PA 314. The second analysis regarding 1998 PA 314 observed that abolition of the mandatory life sentence and creation of parole eligibility for prisoners already serving life sentences for controlled substances convictions would remedy the injustice occasioned by the indiscriminate application of the then existing, unduly harsh mandatory life sentence. House Legislative Analysis, HB 4065 & SB 281 (Second Analysis), January 26, 1999, p 7. By amending MCL 791.234(6) to provide for parole eligibility for the class of over two hundred prisoners previously sentenced to mandatory life terms for controlled substances convictions while amending MCL 333.7401(2)(a)(i) to remove the mandatory life term, the Legislature apparently sought to maintain the integrity of its sentencing scheme to ensure that prisoners convicted of the same crime did not have to serve disparate sentences solely on the basis of the dates they were convicted and sentenced. No indication exists that the Legislature desired to

effect the commutation of the sentence of any individual prisoner on the basis of the personal characteristics of the prisoner.

The available legislative history also expressed that, "despite a huge prison expansion program over the past decade, prisons are still overcrowded," and the mandatory life terms of imprisonment

> threaten[] the state's limited prison capacity and already overburdened taxpayers. The policy not only doesn't make sense financially, it also can result in the early release—due to lack of space—of such violent offenders as rapists and armed robbers, who probably pose a greater danger to more of the state's citizens than those involved in illegal drugs. [Second House Legislative Analysis, *supra* at 8.]

See also House Legislative Analysis, SB 280 & 281, December 4, 1997, pp 6-7, containing similar arguments supporting parole eligibility for prisoners serving life sentences for controlled substances convictions. The December 1997 House Legislative Analysis, *id.* at 1, also noted that "many convicted drug offenders are nonviolent but expensive to keep incarcerated."[7] The legislative aims to lessen prison overcrowding, save taxpayer dollars, and avoid to some extent the premature return to society of certain violent offenders represent proper purposes within the Legislature's plenary authority over public health and welfare matters, Const 1963, art 4, § 51. *Kent Co Prosecutor, supra* at 320-321.

We further find that 1998 PA 314 does not effectively interfere with the Governor's commutation power. The eligibility for parole created by the

---

[7] The second legislative analysis regarding SB 281 noted that during "fiscal year 1996-97, the cost of incarceration was about $24,350 per prisoner." Second House Legislative Analysis, *supra* at 5.

amendment of MCL 791.234(6) and MCL 791.234(10) by the act does not qualify as a commutation. The Supreme Court repeatedly has explained that a legislative authorization of parole for a prisoner does not constitute a commutation.

> "We . . . held [in *People v Cook*, 147 Mich 127; 110 NW 514 (1907) and *In re Casella*, 313 Mich 393; 21 NW2d 175 (1946)] that such *release by parole was not a commutation of the sentence* as such parolees remained under the surveillance of the prison authorities and upon violation of the parole would be returned to the prison to serve the balance of the sentences without any deduction of the time during which they had been released on parole. [*Oakland Co Prosecuting Attorney, supra* at 192 (emphasis added),[8] quoting *People v Freleigh*, 334 Mich 306, 309; 54 NW2d 599 (1952).]

This Court also has recognized that a paroled prisoner remains under his original sentence:

> Parole is a conditional release; a paroled prisoner is technically still in the custody of the Department of Corrections, which is executing the sentence imposed by the court. . . . If parole is successfully completed, the remaining portion of the sentence is discharged as a "gift" from the executive branch. . . . However, unless and until parole is successfully completed, "the prisoner is deemed to be still serving out the sentence imposed upon him by the court." [*People v Raihala*, 199 Mich App 577, 579-580; 502 NW2d 755 (1993), quoting *In re Dawsett*, 311 Mich 588, 595; 19 NW2d 110 (1945).]

---

[8] We note that the Supreme Court in *Oakland Co Prosecuting Attorney, supra,* declined to hold that a distinction existed between "release on parole, when the parolee remains subject to the supervision of and possible recall by the parole board, from release on unconditional pardon or commutation of sentence" because such a finding became unnecessary in light of the Court's conclusion that the prison overcrowding act came within the Legislature's constitutional power over indeterminate sentences. *Id.* at 194.

Consistent with the foregoing authorities, we conclude that the Legislature's authorization of parole eligibility for prisoners serving life sentences for controlled substances convictions, who if released on parole would remain under the surveillance of prison authorities, does not encroach on the Governor's commutation power.[9] The Governor remains free to exercise his constitutional powers of clemency with respect to individual prisoners serving life sentences for controlled substances convictions "as he, in his discretion, feels the circumstances warrant." *Oakland Co Prosecuting Attorney, supra* at 197.

The prosecutor suggests that the Legislature's conditioning of earlier parole on a prisoner's cooperation with law enforcement constitutes an unlawful commutation because "the statute has clearly created a condition which is highly individualized and is intended solely for the benefit of that prisoner only." We observe, however, that the Legislature, motivated by general concerns for the public welfare including an unfairly disparate sentencing scheme and prison overcrowding, provided within MCL 791.234(6) and 791.234(10) for the earlier parole of the entire sub-

---

[9] Because we have determined that 1998 PA 314 does not infringe the gubernatorial commutation power, we need not find "a constitutional grant of authority to alter determinate sentences." *Kent Co Prosecutor, supra* at 325.

We also note our rejection of the prosecutor's reliance on *Freleigh, supra,* for the proposition that in this case the Legislature may not enact a law infringing the Governor's commutation power. The act at issue in *Freleigh,* 1951 PA 159, authorized a judge to revisit, vacate, and modify a sentence previously imposed, which sentence amendment the Supreme Court deemed violative of the Governor's commutation power. *Freleigh, supra* at 307, 309-310. Unlike *Freleigh,* this case involves the Legislature's action to authorize a prisoner's release on parole, which does not represent a sentence amendment. *Oakland Co Prosecuting Attorney, supra* at 192; *Raihala, supra.*

class of drug lifers that have cooperated with law enforcement. The intent of the Legislature in enacting MCL 791.234(10) was to authorize earlier parole eligibility for this entire subclass of prisoners, irrespective of any individual prisoner's unique personal characteristics or circumstances, and that provision does not contemplate any specific prisoner's exclusive release on parole. *Kent Co Prosecutor, supra* at 323-324.

The prosecutor further contends that *Oakland Co Prosecuting Attorney*, which involved the Legislature's passage of a law providing for release of prisoners imprisoned under indeterminate sentences, *id.* at 194, offers no guidance in the instant case involving the Legislature's authorization of parole that alters a previously *mandatory* term of life imprisonment. In *Kent Co Prosecutor, supra* at 325, however, the Supreme Court rejected the prosecutor's similar argument "that *Oakland Co* can be distinguished from the present case because the jail overcrowding act affects determinate, rather than indeterminate, sentences, and the Legislature does not have a constitutional grant of authority over the former as it does over the latter." The Supreme Court concluded that "the Legislature, in confronting the present situation affecting the common good, can incidentally reduce jail sentences *whether indeterminate or not.*" *Id.* at 326 (emphasis added).

As previously discussed, in this case the Legislature apparently enacted 1998 PA 314 (1) to create uniformity with respect to the penalties imposed for violations of MCL 333.7401(2)(a)(i) by bringing preamendment sentences into line with the terms of punishment to be imposed under the amended version of MCL 333.7401(2)(a)(i), (2) to alleviate to some degree

the persistent problem of prison overcrowding, (3) to save taxpayers the cost of lifetime incarcerations of violators of MCL 333.7401(2)(a)(i), and (4) to reduce the likelihood that other felons who were violent might obtain early release on parole because of prison overcrowding resulting from nonviolent drug offenders not being eligible for parole. Because the primary purposes of 1998 PA 314 all serve the public good, we conclude that the Legislature acted properly to the extent that it incidentally reduced the prison terms of prisoners previously convicted of drug offenses that carried life sentences without the possibility of parole. *Kent Co Prosecutor, supra* at 326.

We reverse the trial court's order denying defendant's motion for earlier parole consideration and remand for a hearing to determine to what extent, if any, defendant can provide law enforcement cooperation as contemplated by MCL 791.234(10). We do not retain jurisdiction.

CAVANAGH, J., concurred.

WILDER, J. (*dissenting in part.*) Defendant appeals from a lower court order denying his motion, filed pursuant to MCL 791.234(10), for judicial determination of cooperation. I would affirm the lower court's denial of the motion and find that (1) the word "cooperated," when examined in context with the remaining language of MCL 791.234(10), is unambiguous, (2) MCL 791.234(10) imposes a temporal limitation on any trial court finding of cooperation by a prisoner and requires that "cooperation" must have actually occurred before a prisoner is eligible for early parole under that provision, and (3) remand is not warranted in this case because defendant failed to establish eligibility for early parole under MCL 791.234(10).

Accordingly, I respectfully dissent from subsections B, C, and D of § II of the majority opinion. *Ante* at 12-18.

I

As noted by the majority, this case requires us to interpret MCL 791.234(10) as a matter of first impression. Statutory interpretation is a question of law that we review de novo. *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 469; 628 NW2d 577 (2001), citing *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n,* 456 Mich 590, 610; 575 NW2d 751 (1998); *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998).

> In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [*Macomb Co Prosecutor v Murphy,* 464 Mich 149, 158; 627 NW2d 247 (2001) (citations omitted).]

The fact that the Legislature has omitted the definition of a word that has a common usage does not create ambiguity. *Group Ins Co of Michigan v Czopek,* 440 Mich 590, 596; 489 NW2d 444 (1992). In this event, a court may establish the meaning of a term through a dictionary definition. *Michigan Millers Mutual Ins Co v Bronson Plating Co,* 445 Mich 558, 568; 519 NW2d 864 (1994).

In the instant case I would find that the term "cooperated," in the context of this statute, is unambiguous.

As noted by the majority, the words "cooperate" and "cooperation" have ordinary and generally accepted meanings. The statute plainly seeks to create an eligibility for early parole release for only those prisoners who have "worked" or "acted willingly" with law enforcement officers toward the common purpose of law enforcement. Stated another way, those prisoners who in the past provided information to law enforcement that could be legitimately used to investigate criminal activity are granted by the Legislature in MCL 791.234(10) a special eligibility for parole. The fact that the circumstances under which such cooperation can occur are varied and multiple, requiring a case-by-case analysis to determine whether a particular prisoner qualifies to be eligible for early parole release, does not in my view render the term "cooperated" ambiguous. See, e.g. *People v Philabaun*, 461 Mich 255, 263; 602 NW2d 371 (1999); *People v Vasquez*, 240 Mich App 239, 244; 612 NW2d 162 (2000), rev'd on other grounds 465 Mich 83; 631 NW2d 711 (2001) (whether conduct fits within a statute should be decided case by case with special attention to the facts). This is particularly true where the Legislature has used the term "cooperation" in three other statutes without providing any statutory definition. See MCL 400.239, 500.2446, and 500.2640.

II

I also disagree with the majority's conclusion that the Legislature placed no temporal limitation on the determination whether a prisoner has cooperated with law enforcement. In interpreting statutory language, every word should be given meaning, and no word, if at all possible, should be treated as surplus-

age or rendered nugatory. *Hoste v Shanty Creek Management, Inc,* 459 Mich 561, 574; 592 NW2d 360 (1999); *Camden v Kaufman,* 240 Mich App 389, 395; 613 NW2d 335 (2000). Three phrases chosen by the Legislature are powerful indicators of the intent of the legislation. The statute requires that the prisoner "*has* cooperated with law enforcement," and notes the prisoner "is considered to *have* cooperated with law enforcement" in absence of certain conditions. Further, "[i]f the court determines at sentencing that the defendant *cooperated* with law enforcement," then eligibility is established.

The fact that the Legislature did not state a precise time by which the cooperation was to have occurred does not, in my view, render the statute ambiguous because the words "has" and "have," as used in these phrases, are present perfect tense verbs. Garner, *A Dictionary of Modern American Usage* (New York: Oxford University Press, 1998), p 645. Present perfect is defined as "of, pertaining to, or being a verb tense or form indicating that the action or state expressed by the verb *was completed prior to the present or that it extends up to or has results continuing up to the present.*" *Random House Webster's College Dictionary* (2nd ed, 1997), p 1030 (emphasis added). Giving the phrases "has cooperated" and "have cooperated" their plain meaning, then, it is clear that the Legislature intended that the prisoner's cooperation must have occurred at some time before the prisoner's application for parole release under MCL 791.234(10). Similarly, the phrase "had no relevant or useful information to provide", when given its plain meaning and considered in relation to the present perfect tense clause "have cooperated," expresses the Legislature's intent that the prisoner must have lacked

information before the prisoner's application for treatment under MCL 791.234(10), in order to be found as a matter of law to have cooperated.

Under the statute, then, the offer of "stale" information in an attempt to qualify for treatment under MCL 791.234(10) would fail if the evidence established that the prisoner possessed the information and could have offered it to law enforcement when it was not stale, i.e., relevant and useful, but did not do so. Such a determination must be made in the first instance by the lower court and is a factual determination that we should not disturb unless there is clear error. *People v Fields*, 448 Mich 58, 76; 528 NW2d 176 (1995). In the present case, the lower court found that defendant's offer to cooperate was not the equivalent of actual cooperation. This finding is not clearly erroneous, and I would affirm the decision of the lower court. Defendant's motion for judicial determination established, at best, merely a future, *stated willingness* to cooperate with law enforcement. The only evidence before the lower court at the time of the motion was defendant's "offer" to cooperate in the form of defense counsel's letter to the prosecutor. This letter fails to establish either that defendant had already cooperated with law enforcement *or* that at no time before the motion did defendant have relevant or useful information to provide. Because the evidence presented to the lower court at the time of the motion was insufficient to establish cooperation as required by the statute, remand to the trial court for an evidentiary hearing is not warranted. See, e.g., *People v Arenda*, 416 Mich 1, 14; 330 NW2d 814 (1982) (absent an offer of proof an appellate court can only speculate about the existence of relevant evidence); *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d

922 (1973) (remand is appropriately denied where the defendant fails to demonstrate by affidavit or offer of proof that the type of factual record that is required before an issue can be decided by this Court could be developed).

For the foregoing reasons, I would affirm the lower court's denial of defendant's motion for judicial determination of cooperation.